**RECEIVED**
05/02/2025
KELLY L. STEPHENS, Clerk

No. 25-3287

---

# In the United States Court of Appeals
# for the Sixth Circuit

MICHAEL SMITH,

*Plaintiff-Appellant,*

- v. -

FLOCK GROUP INC,

*Defendant-Appellee,*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO,
THE HON BENITA Y PEARSON, PRESIDING
NO. 5:23-CV-02198.

---

OPENING BRIEF OF PLAINTIFF-APPELLANT

---

MICHAEL SMITH
1225 SKYLINE DR 105
ORRVILLE OH 44667
PRO SE APPELLANT

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure and Sixth Circuit Rule 26.1, the Appellant certifies that no party to this appeal is a subsidiary or affiliate of a publicly owned corporation and no publicly owned corporation that is not a party to this appeal has a financial interest in the outcome.

# TABLE OF CONTENTS

*TABLE OF CONTENTS*..................................................................................*i*

*TABLE OF AUTHORITIES* .........................................................................*v*

*STATEMENT IN SUPPORT OF ORAL ARGUMENT*...............................*1*

*INTRODUCTION* ........................................................................................*2*

*JURISDICTIONAL STATEMENT*...............................................................*4*

*STATEMENT OF ISSUES FOR REVIEW* ...................................................*4*

*FACTS & PROCEEDINGS BELOW* ...........................................................*5*

    a.   Background .......................................................................................5

    b.   FLOCK Safety is not a social media platform ...............................7

    c.   FLOCK is negligent in distributing false information ..................8

    d.   FLOCK SAFETY as a State Actor ................................................9

    e.   FLOCK commands police in taking preemptive actions before crimes are committed.......................................................................................11

    f.   Software integration ....................................................................15

    g.   FLOCK and law enforcement share collective knowledge.........18

    h.   District Court Proceeding below .................................................21

*SUMMARY OF THE ARGUMENT* ........................................................*22*

*ARGUMENTS* ..................................................................................*23*

*1.   THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY NOT*

*FOLLOWING RULE 12(d) BY NOT GIVING NOTICE TO MICHAEL SMITH*

*WHEN THE COURT CONSIDERED UNVERIFIED RECORDS OUTSIDE THE*

*PLEADINGS.*.....................................................................................*23*

   a.   Standard of Review ................................................................*23*

   b.   This Court's position in how Rule 12(b)(6) should be conducted ..............*24*

   c.   Those Outside Pleadings are not admissible and are hearsay. ...................*24*

   d.   District Court uses the outside pleadings multiple times ...........................*27*

   e.   Motion to Dismiss does not allow what happened here. ............................*30*

   f.   Appellee can't benefit from its invited error through an erroneous

dismissal. ..........................................................................................*30*

*2. THE DISTRICT COURT ERRED IN DISMISSING MICHAEL SMITH'S § 1983*

*CLAIMS, AS THE SECOND AMENDED COMPLAINT ALLEGED SUFFICIENT*

*FACTS TO SUPPORT PLAUSIBLE CLAIMS OF CONCRETE INJURIES*

*RESULTING FROM FLOCK'S ACTIONS.* ...........................................*32*

   a.  Standard of review ..........................................................................*32*

b.     Michael Smith Sufficiently Pled That FLOCK Safety Acting was a State

Actor Under 42 U.S.C. § 1983, ...........................................................34

    1.     FLOCK'S Fourth and Fourteenth Amendment violations ......................34

    2.     FLOCK'S Fifth Amendment violations .................................................38

c.     FLOCK Safety's Influence Over Government Operations and Law

Enforcement Warrants § 1983 Liability .............................................40

d.    The District Court's Analysis Ignored Key Allegations and Precedent ......41

e.     Flock Safety's Role in Shaping Law Enforcement Policies and Practices..42

f.     Flock Safety's Deep Integration into State Law Enforcement Systems......44

g.    Flock Safety's Influence Over Law Enforcement Legal Guidance and

Policy and Government Allowing It...................................................47

h.    Flock Safety's Actions Directly Led to the Unlawful Seizure of Michael

Smith ...........................................................................................48

i.     A private company influenced government operations, and the State

permitted it—an unprecedented situation. This Court should adopt a clarified

framework. ...................................................................................50

j.     Flock Safety's Attempt to Evade Liability While Operating as a Quasi-

Governmental Entity; thus, the District Court's decision must be reversed........51

*3. THE DISTRICT COURT ERRORED IN DISMISSING MICHAEL SMITH'S PLAUSIBLE STATE CLAIMS AS THE COMPLAINT ALLEGES INJURIES RESULTING FROM FLOCK'S ACTIONS.* ............................................................ *53*

a.    Design Defect ........................................................................ 54

b.    Failure to Warn .................................................................... 57

c.    Nonconformance with Representations...................................... 58

d.    Defamation ........................................................................... 59

e.    Intentional Infliction of Emotional Distress (IIED) ................... 61

f.    Unjust Enrichment................................................................. 61

g.    Fraudulent Concealment........................................................ 63

h.    Conversion............................................................................ 64

i.    Summary ............................................................................... 65

*CONCLUSION* ..................................................................... *69*

*TYPE-VOLUME CERTIFICATION* ......................................... *71*

*DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS* ................... *72*

# TABLE OF AUTHORITIES

## CASES

Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970) ..........................................11, 36

Ansfield v. Omnicare, Inc. (In re Omnicare, Inc. Sec. Litig.), 769 F.3d 455 (6th Cir. 2014)..................................................................................................29

Ashcroft v. Iqbal, 556 U.S. 662 (2009) .......................................................22, 33, 52

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ..........................22, 34, 65, 66

Brower v. County of Inyo, 489 U.S. 593 (1989) ....................................................35

Carpenter v. United States, 585 U.S. ___ (2018) ..................................................35

Chapman v. Higbee Co., 319 F.3d 825(6th Cir. 2003) ..........................................45

Courie v. Alcoa Wheel & Forged Products, 577 F.3d 625 (6th Cir. 2009)..............32

Crislip v. TCH Liquidating Co., 52 Ohio St.3d 251, 556 N.E.2d 1177 (1990).57, 58

Cruz v. Donnelly, 727 F.2d 79 (3d Cir. 1984) .......................................................10

Erickson v. Pardus, 551 U.S. 89 (2007) ................................................................33

Fortney v. McQuillen, 2019-Ohio-4941..................................................................62

Gavitt  v. Born, 835 F.3d 623 (6th Cir. 2016).........................................................25

Haines v. Kerner, 404 U.S. 519 (1972) ..................................................................66

Haskell v. Washington Twp., 864 F.2d 1266 (6th Cir. 1988) ...................................7

Hummel v. Hummel, 14 N.E.2d 923,133 Ohio St. 520...........................................62

Illinois v. Andreas, 463 U.S. 765 (1983) .................................................................18

Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921(6th Cir. 1999).................................................................................................................66

Landham v. Lewis Galoob Toys, Inc., 227 F.3d 619 (6th Cir. 2000) ......................63

Lawrence v. Chancery Court of Tenn., 188 F.3d 687 (6th Cir. 1999) .....................32

Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922 (1982)..............................2, 35, 38

Manhattan Community Access Corp. v. Halleck, 139 S. Ct. 1921 (2019)................2

Mendiondo v. Centinela, 521 F.3d 1097...................................................................51

Michigan v. Chesternut, 486 U.S. 567 (1988)..........................................................48

Monasky v. Taglieri, 140 S. Ct. 719 (2020) ............................................................24

Paige v. Coyner, 614 F.3d 273 (6th Cir. 2010) ........................................................10

Partin v. Davis, 675 F. App'x 575 (6th Cir. 2017) ...................................................35

Perkins v. Wilkinson Sword, Inc., 1998-Ohio-16......................................................55

Reynolds v. Green, 184 F.3d 589 (6th Cir. 1999)...............................................27, 69

Richardson v. McKnight, 521 U.S. 399 (1997).........................................................51

S Simpson v. Midland-Ross Corp., 823 F.2d 937 (6th Cir. 1987)...........................52

Scott Peatross v. City of Memphis, 818 F.3d 233 (6th Cir. 2016)...........................65

Song v. City of Elyria, Ohio, 985 F.2d 840 (6th Cir. 1993) ....................................24

Teamsters v. United States,431 U.S. 324 (1977)......................................................53

United States v. Banks, 514 F.3d 769 (8th Cir. 2008). ............................................18

United States v. Blair, 524 F.3d 740 (6th Cir. 2008) ...............................................18

United States v. Price, 383 U.S. 787 (1966)....................................................36

VoteVets Action Fund v. U.S. Dep't of Veterans Affairs, 992 F.3d 1097 (D.C. Cir.

2021)...........................................................................................17

Wittner v. Banner Health, 720 F.3d 770 .....................................................42

Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d 1102 (6th Cir. 2010) ........................28

Yeager v. Local Union 20, 6 Ohio St. 3d 369 (Ohio 1983) ...................................59

## STATUTES

18 U.S.C. § 2722 .............................................................................38

28 U.S.C. § 1291 .............................................................................4

28 U.S.C. §1391 (b)(2)........................................................................4

42 U.S.C. § 1983 ..............3, 5, 21, 22, 31, 32, 34, 36, 38, 49, 42, 50, 51, 53, 65, 69

47 U.S.C. § 230 ..............................................................................7

O.R.C. § 149.43.............................................................................25

O.R.C. § 2307.75(B)(1).......................................................................55

O.R.C. § 2307.77............................................................................58

O.R.C. § 2739..............................................................................61

O.R.C. § 4501.27(F)(3) ......................................................................64

O.R.C. §2307.75..................................................................................54

## RULES

Fed. R. Civ. P. 8(a)(2).........................................................................33

Fed. R. Civ. P. 12(b)(6)................................................24, 25, 32, 33, 65

Fed. R. Civ. P. 12(d) ....................................4, 22, 23, 24, 26, 69

Fed. R. Evid 201..................................................................................24

Fed. R. Evid 401..................................................................................52

Fed. R. Evid 801..................................................................................25

Fed. R. Evid 801(c) ............................................................................66

Fed. R. Evid 802..................................................................................25

## CONSTITUTIONAL PROVISIONS

Fifth Amendment.......................................................................21, 38, 39

Fourteenth Amendment ............................................................21, 34, 38

Fourth Amendment.......................................................21, 23, 34, 35, 48

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Pursuant to the Federal Rule of Appellate Procedure and Sixth Circuit Rule 34(a), the Appellant hereby respectfully requests oral argument on the present appeal. The Appellant believes oral argument will assist the Court in considering the novel facts and arguments in this appeal, especially regarding the 1983 claims and how they apply to FLOCK.

**INTRODUCTION**

Over 40 years ago, the Supreme Court declared private parties accountable as state actors in Lugar v. Edmondson Oil Co.[1] The Court held, "In our cases, we have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State. These cases reflect a two-part approach to this question of "fair attribution."

First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." continuing with the two-part analysis, "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." The Supreme Court has since held firm to this as recently as 2019[2]. The matters at issue here are:

Can the Appellee benefit from an error it invited—namely, inducing the District Court to consider unverified materials outside the pleadings, which were neither attached to nor referenced in the Appellant's Complaint? These pleadings were instead submitted with the Appellee's Motion to

_____

[1] 457 U.S. 922, 937 (1982)
[2] Manhattan Community Access Corp. v. Halleck, 139 S. Ct. 1921, 1928 (2019)

Dismiss—where the District Court relied on those unauthenticated non-public materials to dismiss the Complaint without converting the motion into one for summary judgment.

Also, can an unsanctioned dispatcher for Jackson Township, FLOCK Group Inc ("FLOCK Safety"), with its vast influence over Jackson Township police actions, violate people's rights by dictating police actions and not be liable under 1983?

The answer to both, of course, is no.

Without FLOCK Safety dispatching and directing Jackson Township ("JTPD") police operations, the police would never have pulled over the Appellant on February 25, 2023. Authorities never suspected the Appellant of any crime; there were never any facts to support any probable cause. The District Court erred by considering unauthenticated pleadings from other cases when ruling on the Appellee's Motion to Dismiss.  These pleadings were attached to the motion (Pleadings, RE 22-1 and Order, RE 38, PageID #: 1005).

The other issue is whether the District Court erred by misinterpreting Michael Smith's Complaint, dismissing his claims despite sufficient evidence, and misrepresenting or ignoring key allegations supporting the classification of

FLOCK warrants as state actions. The District Court's Order describes a starkly different scenario than what is alleged in the Complaint. Reversal and remand is warranted due to the procedural issue alone.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this case pursuant to 28 U.S.C. §1391 (b)(2). The Court of Appeals has subject matter jurisdiction over this case in accordance with 28 U.S.C. § 1291. This is an appeal from a final decision from the District Court that disposed of all the party's claims. The final decision appealed was entered on April 16, 2024. The Appellants filed a prompt Motion to alter the judgment on April 25, 2024, which the District Court denied on March 20, 2025 (Order, RE 46). A timely amended notice of appeal was filed on April 14, 2025 (Appeal, RE 49).

## STATEMENT OF ISSUES FOR REVIEW

The District Court made a clear reversible error by using outside pleadings from another case attached to the Motion to Dismiss (RE 22) to help justify dismissing the Complaint. The Court did not convert the motion to a Summary Judgment, which is not consistent with Rule 12(d).

Whether the District Court erred in dismissing Michael Smith's Complaint. The reason provided by the District Court is that the Complaint apparently failed

to allege sufficient facts to make a plausible claim of which to hold FLOCK as a state actor under 42 U.S.C. § 1983 (Order, RE 38, PageID #: 1012). The District Court also stated throughout the Order that the Complaint has failed to allege facts to support any state claims.

## FACTS & PROCEEDINGS BELOW

The allegations in the Complaint, taken in the light most favorable to Mr. Smith, show as follows.

### a. Background

Appellant Michael Smith, a Wayne County, Ohio resident, worked as a Lyft driver in the early hours of February 25, 2023. At approximately 3:33 AM, he turned from Fulton Drive onto the dead-end South Blvd NW to drop off a passenger. Unbeknownst to him, a Flock Safety camera monitoring vehicles entering the dead-end street triggered a text and email flagging Smith as being wanted, to all third-shift Jackson Township Police Department ("JTPD") officers at 4:33:35 EST ( Alert email, RE 21-9 PageID #: 705). Though not formally a police warrant, FLOCK's flagging's functions exactly like one: it identified Mr. Smith as a suspect and effectively commanded his detention despite having no legal basis in fact or law.

5

Smith committed no crime, nor did he violate any traffic laws. Minutes later, at 3:35 AM, an unlawful traffic stop— lacking reasonable suspicion or probable cause—was conducted (because FLOCK directed so), but *by* multiple police units surrounding his vehicle because of FLOCK. The police report makes it clear that FLOCK's "flagging" was the sole reason for the stop. Indeed, Jackson officers simply followed FLOCK's flagging's as commands. The flagging acted like a warrant and claimed Smith was wanted—but with no warrants/ detainers—but FLOCK still automatically dispatched law enforcement via texts and emails about a human trafficker driving on Fulton Rd.

FLOCK owns all hosted data, including the data in the flagging's so its "their" alert, as stipulated under the "Ownership" section of its contract (FLOCK contract, RE 21-24, PageID #: 752). FLOCK's API also provides access to the data it sells ( Email for ALPR data, RE 21-1, PageID #: 675) per the emails obtained by public record requests to Ohio police agencies where FLOCK is selling the data for 100k.

The API contains the same data that was present in the flag, which is Smith's personal information. FLOCK did not have permission to sell access to Smith's data.

6

### b.  FLOCK Safety is not a social media platform

Unlike Facebook or other social media, the flagging's are not user-generated. FLOCK does not consider itself a social media platform ( FLOCK answer, RE 23, PageID #: 897  "Flock admits that it is not a social media platform"), and nowhere does FLOCK state that it hosts user-generated content. Indeed, the MOU contracts that FLOCK requires its customers to sign again show that the data belongs to FLOCK ( FLOCK Contract, RE  21-24, PageID #: 752)

"Flock and its licensors retain all rights, titles, and interest in *** data provided by Flock***."

Neither FLOCK nor the District Court stated that Section 230 is applicable here because it's not. FLOCK did not raise *any* immunity affirmative defense in their answer, even regarding Section 230; thus, it is *generally* waived.[3] (See FLOCK Answer, RE 23, PageID #: 901). This Court in Jones wrote regarding Section 230 and defamatory material.[4]

_____

[3] Haskell v. Washington Twp., 864 F.2d 1266, 1273 (6th Cir.1988)
[4] Jones v. Dirty World Entertainment Recordings LLC, 755 F.3d 398, 407 (6th Cir. 2014)"

"Absent § 230, a person who published or distributed speech over the Internet could be held liable for defamation even if he or she was not the author of the defamatory text, and, indeed, at least with regard to publishers, even if unaware of the statement." Id.

At its core, § 230 bars "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." Zeran, 129 F.3d at 330. In Zeran, a case arising shortly after the enactment of the CDA, the panel considered a defamation claim against America Online (AOL), alleging "that AOL unreasonably delayed in removing defamatory messages *** failed to screen for similar postings thereafter." Id. at 328.

### c.  FLOCK is negligent in distributing false information

FLOCK's negligence caused Smith to be wrongly held for approximately an hour. The Appellant's stop was directly from FLOCK's actions. Only after JTPD checked with agencies stated within FLOCK's flagging's, did Jackson Township realize the stop was unnecessary. (Police Report, RE 21-11, PageID #: 709-711) The technology exists to have proper data validation to stop an erroneous

8

flagging's before it is sent. The FBI and other agencies named in the flagging's were just as baffled as the Jackson Township police.

### d. FLOCK SAFETY as a State Actor

FLOCK's flagging system is not a mere suggestion or marketing tool—it is an operational directive integrated into JTPD policing. FLOCK determines, without JTPD review, who is flagged as a suspect, and that determination triggers JTPD action. JTPD does not exercise discretion in this process. Unlike FLOCK cameras, JTPD officers can't manually run 15,000 license plates of motorists (Case Study, RE 21-3, PageID #: 681) into law enforcement databases in a day. JTPD cedes those traditional police gatekeeping (e.g., warrant checks, probable cause) to FLOCK. It's by design and by policy, JTPD has delegated its authority of initiation of seizures to a private system. That's more than influence—it is state action under Brentwood and Lugar.

FLOCK's business model, supported by JTPD, involves extensive collaboration with law enforcement, including direct communication with Jackson Township police officer's work devices, as this case shows. This integration lets FLOCK bypass traditional dispatch protocol, sending direct flagging's via text and email to JTPD officers—circumventing the scrutiny and procedural safeguards

typically provided by 911 dispatchers ( FLOCK Brochure, RE 21-34, PageID #: 803 "Email and SMS alerts to users, Audible and visual alerts").

Although the Appellant wasn't flagged in databases like NCIC, the flagging's prompted his swift apprehension by JTPD. "According to both, the critical issue before us today is whether the State, through its agents or laws, has established a formal procedure or working relationship that drapes private actors with the power of the State." [5] Instead of a state official contacting a private employer to cause a firing, as in Paige vs Coyner[6]; This case involves a state-contracted private company dispatching police, leading to a motorist's detainment.

The District Court failed to consider a crucial element: reasonable foreseeability; it should define FLOCK's liability for the consequences of its actions. What was stated in Paige is applicable here. The consequence that flows from FLOCK sending a false flagging to all JTPD officers' phones and emails about an alleged human trafficker driving on Fulton Rd is that all third-shift police officers will swarm Fulton Rd to swiftly detain the Appellant without an inkling of probable cause.

---

[5] Cruz v. Donnelly, 727 F.2d 79, 82 (3d Cir. 1984)
[6] 614 F.3d 273

FLOCK bypasses the regular dispatcher safeguards entirely by working in concert with JTPD. In holding that certain private parties acted under the color of state law, courts have found that the party acted "jointly," "in concert," or "in a conspiracy" with state officials. [7]

### e. FLOCK commands police in taking preemptive actions before crimes are committed.

FLOCK does not market itself as a traditional ALPR provider. Instead, it brands itself as a "public safety operating system," boasting to law enforcement that "Our proprietary devices and cloud-based software reduce crime by +70%" (See Complaint, RE 21, PageID #: 631).

FLOCK's claim to law enforcement agencies that its technology "reduces crime by +70%" affirms preemptive policing actions because of FLOCK devices—such as initiating traffic stops before any crime has been committed—as occurred in the instant matter.

Aside from FLOCK's own words, there is hard evidence of FLOCK being the main actor and having the police take preemptive actions before any crime was

---

[7] See, e.g., Adickes v. Kress Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1969)], Coggins v. Carpenter,468 F. Supp. 270, 282 (E.D.Pa., 1979)

committed. This Court can look at a particular flagging sent by FLOCK to a police department ( Protection Order Alert, RE 21-10, PageID #: 707). This flagging shows that, regardless of whether a motorist is accused of a crime, FLOCK will still flag the police.

In the above flagging, RE 21-10, FLOCK sent an flagging to the police just on the mere fact that there is a registered protection order in NCIC, not that the motorist committed any crime. Unfortunately for the motorist, the actions that will likely flow from that flagging are: when the police get that FLOCK notification, the police will start to drive out to that camera to find the vehicle, even if no crime was committed, similarly to what the police did in this instant matter.

 Police notification via FLOCK doesn't require a motorist's criminal implication. FLOCK will still flag to police of a motorist's whereabouts, even of general facts such as the existence of a civil protection order.

FLOCK flagging are designed to have the police take preemptive actions *before* drivers are legally (or in the court of law) accused of a crime, such as that were seen in the instant matter and in RE 21-10. FLOCK ordered the stops via the "flag" on the Appellant and other motorists. FLOCK is paid via FLOCK's lease; to

provide ALPR devices but the vast collective knowledge being shared between FLOCK and JTPD from that ALPR lease among other benefits is a bonus.

This pattern aligns with publicly available data showing that, after the deployment of FLOCK cameras in April 2022, Jackson Township reported a 180% increase in high-priority traffic stops — the same type of stop at issue here.



(Complaint, RE 21, PageID #: 647) (Police Report, RE 21-11, PageID #:

709 Under "Agencies," the Appellant's traffic stop is labeled "High" priority.)

### f. Software integration

Beyond ALPR, the company's reach encompasses software integration, direct police communication, and close government relationships; this allows it to bypass standard dispatch, flag motorists by text message to JTPD officers, and leverage JTPD functions for commercial gain. The company engages in activities which has nothing to do with being a "Public safety operating system," such as FLOCK using the State of Ohio's limited police resources as a marketing tool and requesting reference letters from police agencies like JTPD to be used to get more grants from the State ( FLOCK Email asking for Reference letters RE 21-30, PageID #: 790)

FLOCK assists law enforcement agencies in applying for grant money from the Attorney General of Ohio to lease FLOCK devices. (Attorney General Grant email to Police RE 21-23 PageID #: 749) and (Complaint, RE 21, PageID #: 603-PageID #: 605) FLOCK helps draft legislation and policies for township police departments (Complaint, RE 21, PageID #: 610).

FLOCK helps manage public relations efforts for township police departments by helping write social media posts for the police. (News Article, RE 21-28, PageID #: 780) (FLOCK Email, RE 21-32 PageID #: 794) or even provide PR templates for the township police to use (Complaint, RE 21, PageID #: 614). News reports citing FLOCK's misuse of Ohio government resources (News Article, RE 21-28, PageID #: 780) have brought this to light.

These actions surpass typical marketing, thus refuting FLOCK's assertions to the District Court. ( Motion to dismiss, RE 22, PageID #: 848) The Complaint highlights the misuse of government resources for FLOCK's commercial advantage, harming taxpayers by turning police into unsanctioned marketers.

 FLOCK's alternative explanations to the District Court demonstrate the Complaint states plausible claims; however, their "marketing" arguments (Motion to Dismiss, RE 22, PageID #: 848) are for a jury to decide, not grounds for dismissal, as FLOCK only offers alternative explanations. Even if FLOCK believes its version will win a jury in the end, "[a] complaint survives a motion to

dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.' "[8]

FLOCK provides free access to the Ohio government (i.e., Ohio Attorney General) and exclusive tools, solidifying its crucial quid pro quo relationship with the head law enforcement agency in Ohio that oversees all law enforcement in Ohio. The Attorney General provides funding grants to police departments for FLOCK cameras. ( Complaint, RE 21, PageID #: 608 and Grant email, RE 21-23 PageID #: 749). This structure breeds codependency on FLOCK from Ohio's head law enforcement agency and local Ohio police, thus providing FLOCK with unhindered access to government data, grants, assets, and support.

The direct effect of FLOCK's operations on JTPD is further proven, again, as stated earlier, by statistical evidence. Jackson Township data reveals a sharp increase in high-priority traffic stops after April 2022. ( Complaint, RE 21, PageID #: 647) The District Court, however, disregarded this crucial evidence, instead narrowly focusing on existing contractual relationships by stating: ("Defendant's

───────────────────

[8] Banneker Ventures, LLC v. Graham , 798 F.3d 1119, 1129 (D.C. Cir. 2015) (quoting Starr v. Baca , 652 F.3d 1202, 1216 (9th Cir. 2011) ). VoteVets Action Fund v. U.S. Dep't of Veterans Affairs, 992 F.3d 1097, 1104 (D.C. Cir. 2021)

business relationships with various law enforcement agencies, alone, is not sufficient to meet the substantial nexus test." Order, RE 38, PageID #: 1012) This is a truncated mischaracterization of the Appellant's claims by the District Court.

### g. FLOCK and law enforcement share collective knowledge

FLOCK's involvement with JTPD surpasses simple contractual agreements, the State allows FLOCK with significant say over where and the number of officers responds to a flagged motorist.  FLOCK, using direct communication, acts like an unofficial government dispatcher, skipping the usual checks and balances of a 911 dispatcher. FLOCK flagging bypass dispatch review, prompting immediate, heightened JTPD police action; this is shown in a February 25, 2023, log entry by JTPD that: "PER CLE PD — THEY ARE NOT SURE WHY THE MALE IS FLAGGED." (Police Report, RE 21-11, PageID #: 710).

This is an example of collective knowledge, a doctrine where the Courts routinely impute collective knowledge between law enforcement officers but the doctrine is applicable to FLOCK. See, e.g., Illinois v. Andreas, 463 U.S. 765, 771 n.5 (1983); United States v. Blair, 524 F.3d 740  (6th Cir. 2008); United States v. Banks, 514 F.3d 769, 776 (8th Cir. 2008).

This collective-knowledge rationale or "fellow officer" can also be extended to the relationship between FLOCK and police officers. JTPD officials' willingness to freely exchange information among each other is no different with how JTPD freely exchange information with FLOCK. While FLOCK is a subscription "Public safety operating system", this is where JTPD and FLOCK share collective knowledge with each other. The crux is, the information FLOCK exchanged with JTPD was false and was the sole cause of the stop. Yes, while a novel argument, but unlike a citizen who isn't under contract to text and email police, FLOCK is, and is also fully integrated with JTPD systems and is functionally part of the JTPD communication network.

The police report entry confirms that JTPD had nothing about Smith but collected Smith whereabouts and alleged crime all from FLOCK (thus collective knowledge) – it was FLOCK's exchange of information to JTPD alone that triggered the alarm. In other words, the stop was not initiated through any State procedure at all (i.e. JTPD dispatcher) but by FLOCK's system with the encouragement of JTPD by privileges such as exclusive access to law enforcement officer contacts and databases, JTPD does FLOCK's bidding when FLOCK send a flag about a motorist to pull over.

19

There is no cognizable reason FLOCK couldn't crosscheck the information with NCIC before exchanging the erroneous information to the police; the technology exists. NCIC is updated every 6 hours ( NCIC inquiry email, RE 21-5, PageID #: 687). NCIC is a critical repository of criminal records maintained exclusively for use by federal, State, and local law enforcement entities. (NCIC Purpose webpage, RE  21-6, PageID #: 689.) FLOCK's system interface and utilization demonstrate its considerable power over government operations, strengthening its status as a state actor.

FLOCK is aware of its considerable influence and omits any clear warning in its flagging that they are not probable cause. The flagging themselves leaves out this vital information.

At the same time, on the FLOCK website webpage, one can see a small disclaimer that the "alerts itself should never be used as probable cause." ( FLOCK webpage warning, RE 21-39, PageID #: 831). This hidden warning on an obscure page on the FLOCKs website also confirms that FLOCK is *aware* of police officer's acts on these flagging's, without those officers understanding that the flagging's do not give rise to probable cause because FLOCK does not warn them in the flagging's *before* the officers take action.

20

The District Court understated FLOCK's significant involvement with state agencies. The strong connection between FLOCK's activities and government roles is a substantial part of the claims. The company's access to law enforcement and sharing collective knowledge, flagging motorists to be pulled over, protocol bypassing, and legislative/public relations influence all point to its status as a state actor. Under 42 U.S.C. § 1983, the Appellant alleges violations of his Fourth, Fifth, and Fourteenth Amendment rights. Because the District Court's dismissal of these claims was based on a flawed understanding of both the facts and law, it should be reversed and remanded.

### h. District Court Proceeding below

This appeal stems from Michael Smith's November 13, 2023, District Court lawsuit against FLOCK Safety under 42 U.S.C. § 1983. Michael Smith's Complaint seeks damages and injunctive relief for constitutional violations, Defamation, libel, product liability, conversion, unjust enrichment, and fraudulent concealment.

Delaware-based FLOCK Group ("FLOCK Safety") leases only ALPR cameras and sells them to law enforcement agencies in Ohio and nationwide. Michael Smith revised the Complaint twice, on December 14, 2023, and January 25, 2024. Flock Safety moved to dismiss every revision of the complaints on the

same grounds (Motion to Dismiss, RE 22) under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim while attaching outside pleadings to dismiss the allegations. On April 15, 2024, the District Court granted the motion and dismissed the case with prejudice. (Order, RE 38.)

Michael Smith moved for reconsideration under 59(e) of the Federal Rules of Civil Procedure on April 25, 2024, asking the Court to reconsider its Order dismissing the case with prejudice ( Motion to Alter, RE 40). The District Court erred by using outside pleadings without converting to a Summary Judgment on a 12(b)(6) motion to dismiss, violating Rule 12(d).

 The District Court did not amend its Order ( Order, RE 46), prompting this appeal.


## SUMMARY OF THE ARGUMENT

Addressing the first issue, which is procedural, the District Court, contrary to Rule 12(d), used unauthenticated pleadings to help dismiss the Complaint (which was attached to the Appellee's Motion to dismiss, never referenced in the Complaint (RE 21). The District Court's decision also in dismissing the Complaint misapplies the Supreme Court's recent decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009); draws inferences in favor of the Defendant rather than the Plaintiff. Smith stated

plausible facts that showed FLOCK violated Smith's rights under the US Constitution.

FLOCK's actions as a State Actor gave rise to JTPD restraining Smith for around an hour. (The "seizure" of a person under the Fourth Amendment can take the form of physical force or a show of authority that in some way restrains the liberty of the person. U.S. Const. Amend. 4.) The District Court's decision should be reversed not just on the procedural issue alone but also on the substantive issues presented.

**ARGUMENTS**

**1. THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY NOT FOLLOWING RULE 12(d) BY NOT GIVING NOTICE TO MICHAEL SMITH WHEN THE COURT CONSIDERED UNVERIFIED RECORDS OUTSIDE THE PLEADINGS.**

**a. Standard of Review**

Because this issue involves a question of law, it is reviewed de novo. "We review questions of law de novo and review for clear error any questions of fact

found by the district court." See *Monasky v. Taglieri*, 140 S. Ct. 719, 730 (2020); *S.C. v. Metro. Gov't*, 86 F.4th 707, 714 (6th Cir. 2023).

### b. This Court's position in how Rule 12(b)(6) should be conducted

This Court stated regarding the process for Rule 12(b)(6) in *Song v. City of Elyria* that "When a party moves to dismiss an action under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, both sides proceed with the expectation that the court will decide the Motion on the basis of the pleadings alone unless the court notifies them otherwise."[9] That was expected here; instead, the District Court considered unauthenticated documents outside the Pleadings that were *not* attached to nor *referenced* in the Complaint (RE 21) rather instead, were attached only to Flock Safety's Motion to Dismiss (which is RE 22). This warrants reversal due to this prejudicial error.

### c. Those Outside Pleadings are not admissible and are hearsay.

Under no plausible understanding of Federal Rule of Evidence 201, 12(b)(6), or 12(d), pleadings ripped from another case can be admissible to prove truth to a matter. The documents attached by FLOCK in its Motion to Dismiss

---

[9] Ohio, 985 F.2d 840, 842 (6th Cir. 1993).

24

meet *no* hearsay exceptions; the third-party pleadings are hearsay under Fed Rules of Evidence 801 and 802.

These records considered by the Court were not authenticated nor "public records." Nor do the records appear in the case record aside from the Appellee's multiple motions to dismiss, which the pleadings were attached to (see Gavitt  v. Born, 835 F.3d 623, 640 (6th Cir. 2016) (internal citations omitted)( "However, a court may consider exhibits attached to the complaint***") but assuming arguendo, even if the records are "public records" a court can consider public records or decisions of public agencies, although only as to their operative effect, and not as to the truth of their factual assertions. Fed. R. Civ. P. 12(b)(6).

Under Ohio law, Section 149.43, PACER pleadings are not public records, nor are those records the "holy grail" of determining the outcome of this case that FLOCK paints the records to be.

The Appellee proceeded with the attached third-party pleadings and erroneously declared to the District Court within their motion to dismiss: "In that case, the following facts were undisputed ***."(Motion to Dismiss, RE 22, PageID #: 841)

Then FLOCK proceeds to inundate the District Court with these allegedly "undisputed" facts, which is a repetition of *unconfirmed* third-party details ripped

25

from a selectively chosen filing obtained from another case in which FLOCK was not involved and is irrelevant to the motion to dismiss phase.

Also, FLOCK's logic doesn't hold—a fact finder never ruled on the pleading attached by FLOCK, so those facts is inadmissible because it third-hand information from a case FLOCK was not privy of. The pleadings that FLOCK attached, the case *never* even went through any discovery (Opposition, RE 32, PageID #: 970), so it is strange for FLOCK to claim now those facts are "undisputed."

In any event, even if the facts (according to FLOCK) were "undisputed," it was immaterial because the District Court was not free to draw an inference in favor of the Defendant, especially with the assistance of outside pleadings.

FLOCK never obtained any of the records from a government agency via records request; rather, instead, *all* the uncorroborated and unpersuasive pleadings it references are downloaded from the Smith Vs. Haddadin's case. Those pleadings were filed in that case months *after* the incident (October 3rd, 2023) ( Outside pleadings, RE 22-1, PageID #: 895 (last page of the exhibit)), so it's irrelevant regarding an incident that happened months prior on *February 25th, 2023.* In other words, FLOCK never had access to these pleadings on February 25th, 2023. Either way, the Federal Rules of Civil Procedure 12(d) prohibits what happened here. The Federal Rules are rules to follow, not suggestions.

26

 The records are hearsay at face value; even if the issue itself of hearsay were not explicitly preserved, this would still constitute plain error due to its obviousness. ("Plain error is an 'obvious and prejudicial' error that requires action by the reviewing court 'in the interests of justice.'")[10]  The Plaintiff brought up multiple issues with the unauthenticated records within the Plaintiff's Opposition to FLOCK's motion to dismiss. However, the District Court still erroneously granted FLOCK's motion. (Opposition, RE 32, PageID #: 969)

The fundamental unfairness in using an unverified pleading written by a third party warrants reversal as it is hearsay. Smith was prejudiced by the unexpected summary judgment treatment.

### d. District Court uses the outside pleadings multiple times

In the Order dismissing the Complaint ( Order, RE 38, PageID #: 1005), The District Court used excerpts from Smith vs Haddadin pleadings (attached by FLOCK) multiple times to counter the arguments by the Appellant. There is no way to take any part of the order without using the outside pleadings, so this omelet cannot be unscrambled.

---

[10] Reynolds v. Green, 184 F.3d 589, 594 (6th Cir.1999)

27

The District Court used FLOCK's exhibit (attached to the Appellee's motion to dismiss) throughout the District Court's opinion to dismiss the Appellant's Complaint. ( Order, RE 38, PageID #: 1002)

This itself is grounds for reversal; any other result will allow the Appellees to use third-party pleadings (which, in the context that they are being used here, are double hearsay) from any closed case to short-circuit the legal process and dismiss a case prematurely. It is unfair to the Appellant and the other party in those closed proceedings to now re-litigate those pleadings/exhibits behind the third party's back.

The District Court considered outside pleadings without converting to a summary judgment motion; this backdoor way of the Appellee having unauthenticated hearsay pleadings considered for a motion to dismiss has been seen frequently in this Court by other litigants in other cases.[11] ("Defendant IBM filed its motion to dismiss on September 3, 2008, and attached a copy of the Release ***"").

The District Court was given notice of this prejudicial error but failed to correct it in any amended order. There is no allegation that the Appellant referenced or attached *any* Smith Vs. Haddadin pleadings to the Complaint. The

_____

[11] Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d 1102, 1105 (6th Cir. 2010)

28

Court not converting the motion to a Summary Judgment deprived the Appellant of procedural fairness.

This Court has stated multiple times that District Courts cannot take judicial notice of pleadings from other cases and treat them like gospel like the District Court did here. ("Generally, a court will recognize only indisputable court actions, such as the entry of a guilty plea or the dismissal of a civil action, see, e.g., Ferguson, 681 F.3d at 834. Importantly, "a court cannot notice pleadings or testimony as true simply because these statements are filed with the court." 21B Charles Alan Wright et al., Federal Practice and Procedure § 5106.4 (2d ed.2005)"[12]

There is no dispute here that the District Court improperly based its decision on unauthenticated hearsay exhibits from a *different* case attached by the Appellee, a practice not permitted. Notably, in the dismissal order, the District Court *only* referenced ECF 22 (Motion to Dismiss, RE 22) in the context of Smith v. Haddadin because it was the *Defendant* who introduced Smith vs Haddadin and attached the cherry-picked pleadings for "judicial notice."

---

[12] Ansfield v. Omnicare, Inc. (In re Omnicare, Inc. Sec. Litig.), 769 F.3d 455, 468 (6th Cir. 2014)

29

**e. Motion to Dismiss does not allow what happened**

**here.**

A Motion to dismiss is not an invitation to go on PACER and find pleadings written by third parties in other cases that may help dismiss the instant case. "Smith Vs. Haddadin's" text makes its appearance *only* in the Motion to Dismiss (RE 22) (Motion to Dismiss, RE 22, PageID #: 841). FLOCK cannot dispute the fact that FLOCK can't show any evidence from themselves that there was any warrant for the Plaintiff for human trafficking by any police agency, as it did not happen ( Police Report, RE 21-11, PageID #: 709).

**f. Appellee can't benefit from its invited error through**

**an erroneous dismissal.**

The Appellee induced the District Court to make a prejudicial error, and it is well known by this Courts case law that District Courts cannot consider outside pleadings for a Motion to dismiss. The Appellee should not use dubious methods to derail the Appellant's Complaint.

The Appellant could not challenge those outside pleadings unless the Court converted the pleading to a Summary Judgment motion, which it did not. The District Court was informed in the original opposition to FLOCK's motion to

dismiss that these records are not authenticated or public record documents, but the Court still granted the motion. (Opposition to Motion to Dismiss, RE 32, PageID #: 970).

The District Court here used the unauthenticated documents attached by the Appellee against the Appellant; it was prejudicial, erroneous and a reversible error.

FLOCKS's legal defense strategy hinges *entirely* on these unauthenticated exhibits; FLOCK can't provide any copy of a warrant, detainer or can allege a crime was committed. Rather than FLOCK addressing the substance of the lawsuit, FLOCK is searching through PACER and downloading any and all unverified pleadings that may refute *any* part of the Complaint in a last-ditch effort to dismiss a complaint that presents plausible claims under § 1983 and state law.

## 2. THE DISTRICT COURT ERRED IN DISMISSING MICHAEL SMITH'S § 1983 CLAIMS, AS THE SECOND AMENDED COMPLAINT ALLEGED SUFFICIENT FACTS TO SUPPORT PLAUSIBLE CLAIMS OF CONCRETE INJURIES RESULTING FROM FLOCK'S ACTIONS.

### a. Standard of review

The District Court dismissed Michael Smith's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. On appeal, this court reviews de novo a dismissal pursuant to Rule 12(b)(6). [13] Also, The Court "must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the Appellant." [14]

Because the Plaintiff is proceeding pro se, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings

_____

[13] Courie v. Alcoa Wheel & Forged Products, 577 F.3d 625, 629 (6th Cir.2009) (citing Marks v. Newcourt Credit Grp., Inc., 342 F.3d 444, 451–52 (6th Cir.2003)

[14] Lawrence v. Chancery Court of Tenn., 188 F.3d 687, 691 (6th Cir. 1999) (citing Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995)

32

drafted by lawyers."[15] ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.")

To survive a 12(b)(6) motion to dismiss, the Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard is met when the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[16]

The Complaint does not need to contain "detailed factual allegations" but simply sufficient factual content to allow the Court to draw a reasonable inference. Here, the Complaint gives fair notice of the conduct in dispute.

Therefore, if a complaint alleges enough facts to state a claim for relief that is plausible on its face, a complaint may not be dismissed for failing to allege additional facts that the Plaintiff would need to prevail at trial. Twombly, 550 U.S. at 570; see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (Plaintiff need not allege specific facts; the facts alleged must be accepted as true,

---

[15] Erickson v. Pardus, 551 U.S. 89, 94
(2007) (cleaned up); see also Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999)

[16] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)

33

and the facts need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests" (quoting Twombly, 550 U.S. at 555).

However, where the requirements of Rule 8(a) are satisfied, "claims lacking merit may be dealt with through summary judgment." Swierkiewicz, 534 U.S. at 514. In this regard, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." Twombly, 550 U.S. At 556 (internal quotation marks and citation omitted).

**b. Michael Smith Sufficiently Pled That FLOCK Safety Acting was a State Actor Under 42 U.S.C. § 1983, claims which do not require a heightened pleading standard.**

The Causes of Action's pleaded are subject to the Twombly pleading standard, not a heightened standard. All the claims, including the 1983, exceed Twombly.

**1. FLOCK'S Fourth and Fourteenth Amendment violations**

The Appellee here are acting as a dispatcher (thus State Actors), and bypassing proper channels to flag motorists straight to the JTPD via email and phone ( Email, RE 21-9, PageID #: 705). The Fourth and Fourteenth Amendments

34

protect individuals from government overreach. Still, under some circumstances, "the conduct of private parties may be deemed to be state action when the 'conduct allegedly causing the deprivation of a federal right may be fairly attributable to the state.' " *Id.*[17]

The "basic purpose" of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."[18] The common law jealously guarded personal liberty "[n]ext to personal security"; such "personal liberty" included "removing one's person to whatsoever place one's own inclination may direct; without imprisonment or restraint, unless by due course of law." [19] FLOCK's actions resulted in the Appellant's liberty being violated; the Appellant was seized because of FLOCK's actions.

The Fourth Amendment's paramount concern—both today and at its adoption—is ensuring an individual's freedom of movement against arbitrary restraints. See, e.g., Brower v. County of Inyo[20] (describing a seizure as the Government's intentional "termination" of a person's "freedom of movement").

---

[17] (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). Partin v. Davis, 675 F. App'x 575, 585 (6th Cir. 2017)
[18] Carpenter v. United States, 138 S. Ct. 2206, 2213 (2018)
[19] 1 W. Black-stone, Commentaries on the Laws of England 130 (1769)
[20] 489 U.S. 593, 597 (1989)

The Supreme Court has recognized that when private parties act in concert with the State to deprive individuals of constitutional rights, they are subject to liability under § 1983. As held in *Adickes v. Kress Co*[21]

"Moreover, a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983. "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents," United States v. Price[22]

The District Court's conclusion that FLOCK Safety did not detain Smith was wrong. Instead, the Complaint makes a specific claim that FLOCK enabled a law enforcement action that resulted in the Appellant's detainment by stating:

*"FLOCK SAFETY, by failing to verify every alert through NCIC and subsequently emailing defamatory information to the police, directly resulted in the Plaintiff's detainment."* ( Complaint, RE 21, PageID #: 588).

_____

[21] 398 U.S. 144, 152 (1970)
[22] 383 U.S. 787, 794 (1966)

FLOCK's impact on JTPD extended past simply supplying images; The moment JTPD received FLOCK's text messages and emails (Email, RE 21-9, PageID #: 705), Jackson Township ("JTPD") responded by locating and detaining Smith within minutes—with no independent investigation or probable cause. Flock Safety, leveraging JTPD connections, failed to sufficiently verify alert accuracy, even through NCIC, prior to sharing with law enforcement.

This lack of validation of the flagging alongside the result that will flow from each flagging sent by FLOCK, which are basically "who to detain" alerts by how police treat it. Here, the flagging resulted in Smith's detention and shows a reckless disregard by FLOCK for citizens' due process rights. FLOCK dictated law enforcement's response against the Appellant, either initiating or determining the State's actions. The Appellant was deprived of liberty and freedom of movement on February 25th, 2023, all from FLOCK's erroneous flagging. FLOCK flagging follows a classic example of cause and reaction. "Cause" is FLOCK sending an flagging; the reaction is police going to the location where FLOCK stated in the flagging that the car was last seen to detain the motorist.

The Supreme Court in Lugar v. Edmondson Oil Co. held:

"Necessary to that conclusion is the holding that private use of the challenged state procedures with the help of state officials constitutes state action for purposes of the Fourteenth Amendment."[23]

Conduct with the state results in constitutional violations. Here, FLOCK's direct engagement with law enforcement, such as direct access to the NCIC and its ability to issue flagging from data in this private system, demonstrate its integration into state/ federal functions. FLOCK working as an extension of JTPD—makes it a state actor under § 1983, this is one of the many actions that warrant FLOCK to be labeled as a State Actor. Flock Safety's actions show a substantial nexus between FLOCK's actions and state authority. This satisfies the *Lugar* test for state action.

### 2.  FLOCK'S Fifth Amendment violations

FLOCK, as a State Actor, violated Federal and State Drivers Privacy Protection Acts (i.e., 18 U.S. Code § 2722) by selling the Plaintiff's vehicle data. (Complaint, RE 21 PageID #: 589-90, ¶72). FLOCK, being a private entity, there is no stumbling block that would stop it from following driver privacy laws; FLOCK

---

[23] Lugar v. Edmondson Oil Co., 457 U.S. 922, 933 (1982)

has to follow the same privacy laws that the State has to follow because FLOCK is a State Actor.

### Sec. 2722. - Additional unlawful acts

(a) Procurement for Unlawful Purpose. - It shall be unlawful for any person knowingly to obtain or disclose personal information from a motor vehicle record for any use not permitted under section 2721 (b) of this title.

FLOCK, as a state actor, committed actions that led to the deprivation of Smith's property because FLOCK took Smith's data contrary to federal and State driver privacy laws. These laws govern the State and, consequently, FLOCK. FLOCK sold the Appellant's information without permission, thus making it public without any compensation. It sold access to his data through its API for hundreds of thousands of dollars. That by and through FLOCK actions with the authorization from the State, FLOCK as a State actor is taking property that rightfully belonged to Smith without any due process. Fifth Amendment's Due Process Clause: "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law," U.S. Const. amend. V.

The State is not allowed to sell a citizen's data, and FLOCK cannot circumvent driver privacy laws as a State Actor.

FLOCK, as a state actor, did not allow Smith any due process to dispute the non-existent "warrant" beforehand; the false flagging (FLOCK notifications are no

different than a warrant, which the State traditionally controls) led to Smith's unlawful detention, and no hearing or notice was given to Smith to dispute the false flagging before being pulled over.

There were no warrants or detainers on the Appellant, nor can FLOCK prove any warrants existed or that the Appellant committed a crime.

### c. FLOCK Safety's Influence Over Government Operations and Law Enforcement Warrants § 1983 Liability

The Complaint plausibly alleges that FLOCK has leveraged its police contracts within the State of Ohio to get unauthorized privileges and access that no other private company enjoys.

FLOCK's influence extends beyond using Ohio township facilities. The company uses "Customer Success Managers" to interact with JTPD officers, which is only supposed to be for device-related matters. However, these managers request that these law enforcement agencies host FLOCK events and distribute FLOCK's marketing materials—actions that go far beyond a simple vendor-client relationship. (Job Posting, RE 21-26, PageID #: 760) show that it calls the police departments it partners with "FLOCK advocates." FLOCK asks these "Advocates" to promote its products to other Ohio police agencies/HOAs, which the police do

40

while on duty and with the credibility of the police badge and/or the government email domain. The job posting states:

> "**** *organizing a community event between the local police department (whom you've turned into Flock advocates)."*

The Complaint claims contracted police departments within Ohio, not random people, and performed all FLOCK's requested actions, such as pamphlet distribution and government building requests. FLOCK and the State have an intertwined relationship.

### d. The District Court's Analysis Ignored Key Allegations and Precedent

Although FLOCK's government ties are widely known and have been reported on the news, the District Court did not adequately address the related claims. Instead, the Court dismissed Smith's claims without addressing the specific factual assertions that establish FLOCK's role as a state actor.

The District Court's reasoning conflicts with precedent from other circuits,

"Payments under government contracts and the receipt of government grants and tax benefits are insufficient to establish a symbiotic relationship between the government and a private entity." Gallagher,49 F.3d at 1453. But a public-private

relationship can transcend that of mere client and contractor if the private and public actors have sufficiently commingled their responsibilities." [24]

FLOCK and JTPD share a perfectly illustrative commingled relationship. The Complaint shows that FLOCK was not just helping law enforcement; it was essentially acting as a state entity, deeply integrated into police work.

Smith's detainment that night hinged entirely on FLOCK Safety's intervention; no warrants or detainers existed. Neither a private citizen nor a pending warrant triggered police involvement. FLOCK prompted a police response based on their false claim that Smith was a human trafficker.

### e.   Flock Safety's Role in Shaping Law Enforcement Policies and Practices

Flock Safety, a company that leases ALPR devices under contract, also plays a significant role in shaping township law enforcement strategies and guidelines. Its role surpasses its contractual agreement with the State, contradicting its prior depiction to the District Court as simply a vendor. For example, FLOCK provides free access to multiple Ohio state agencies, which suspiciously are the same

---

[24] Wittner v. Banner Health, 720 F.3d 770, 778 (10th Cir. 2013)

agencies (i.e., Department of Public Safety, Attorney General) that write funding Grants for ALPRs, which FLOCK has received (Complaint RE 21, PageID #: 600)

For example, Flock Safety assists Ohio township law enforcement agencies in writing policies, as evidenced in the Complaint (RE 21, PageID #: 609 and PageID #: 613). FLOCK reps go to township council meetings, the same townships FLOCK has a lease with. But FLOCK goes with ALPR policies to the townships for them to adopt. (Complaint, RE 21, PageID #: 610), thus influencing governmental decision-making.

If free policy writing was not enough, FLOCK's collaboration with Ohio township law enforcement, such as JTPD, also extends to even public relations and marketing (News Article, RE 21-28, PageID #: 780). Flock Safety "Customer Success" employees solicit township police departments to distribute pamphlets or help market their cameras to schools (Email, RE 21-22, PageID #: 747)

FLOCK employees even end the email and imply to the township police departments that "If you can't do it, tell us who can," which statements are designed to pressure township police and cities inappropriately. FLOCK also asks the township police to host community events to promote FLOCK's products, demonstrating a partnership that exceeds a standard vendor-client relationship.

43

This level of engagement is best exemplified by FLOCK's own assertion that its technology functions as "Your partner in fighting crime" (Complaint, RE 21, PageID #: 610). Solidifying FLOCK role as an integral component of law enforcement operations, its apparent by these marketing taglines that the flagging FLOCK sends are intended to implicate motorists in crimes that are in the flagging, but with no way for the motorist to dispute it beforehand, the motorist has to deal with it.

### f.   Flock Safety's Deep Integration into State Law Enforcement Systems

Flock Safety's close ties with law enforcement, including system and database integration, confirm its status as a state actor. The Complaint (Complaint, RE 21, PageID #: 611) details that FLOCK partners with state programs like Ohio's TALEN and Attorney General. By linking its systems to state and federal law enforcement databases (NCIC), FLOCK performs functions that traditionally fall within the exclusive purview of the Government. Police dispatch systems embed Flock Safety, directly influencing law enforcement responses.

This extensive entwinement with government functions meets the standards established. Under the symbiotic or nexus test, a section 1983 claimant must

44

demonstrate that there is a sufficiently close nexus between the Government and the private party's conduct so that the conduct may be fairly attributed to the State itself. See Wolotsky, 960 F.2d at 1335; see also Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (noting that a challenged activity may be state action "when it is entwined with governmental policies or when the Government is entwined in [its] management or control.") (internal quotation omitted); [25]

Although "it is possible to determine ... whether a person acted under color of state law as a matter of law, there may remain in some instances unanswered questions of fact regarding the proper characterization of the actions for the jury to decide." [26]

The actions here accused by FLOCK, acting as a partner in fighting crime alongside FLOCK's exchanging its collective knowledge with law enforcement which results in motorist's detainment can squarely be "fairly" attributed to state action. From how the State is paying FLOCK to flag motorists to allowing FLOCK become a unit of JTPD by the breadth of its communication. law

_____

[25] Chapman v. Higbee Co., 319 F.3d 825, 834 (6th Cir. 2003)

[26] Layne, 627 F.2d at 13 (internal citations and quotations omitted)

45

enforcement database integrations, FLOCK flag function is no different to a privatized warrant system, which warrant system is a state function. The sharp increase of detainments (180% increase) after FLOCK was installed by JTPD shows motorists end up getting detained after they are flagged by FLOCK, which is no different than a warrant but without any due process.

While FLOCK's contract concerns only the lease of ALPR devices, State encouragement also becomes evident through the level of access and integration the State permits FLOCK to have to police resources. Specifically, the State provides FLOCK with the direct contact information for *every* officer on the force—not just one single point of contact—thus it encourages FLOCK to bypass traditional dispatch protocols entirely that citizens can't.

This JTPD endorsement not only elevates FLOCK's influence over real-time law enforcement responses but the State also permits the company to leverage government infrastructure for private, profit-driven ends. The difference between assigning one point of contact and empowering FLOCK to notify the entire department reflects the State's active role by having FLOCK's operational authority over JTPD. FLOCK functions as a de facto partner of the Jackson Township Police Department—made possible by the JTPD own encouragement.

46

### g. Flock Safety's Influence Over Law Enforcement Legal Guidance and Policy and Government Allowing It.

Flock Safety's influence extends into areas reserved for legal professionals within law enforcement agencies. As stated in the Complaint, FLOCK's legal advice to law enforcement covers areas like probable cause. (Complaint, RE 21, PageID #: 641.) FLOCK warning the police on their website about probable cause via disclaimer shows that police, such as JTPD, react to FLOCK flagging like gospel.

Flock Safety gives agencies, such as Ohio's Attorney General and Bureau of Criminal Investigation, free access to its software, which has no cameras. The same Attorney General gives FLOCK funding for their ALPR devices (Complaint RE 21, PageID #: 608). The mutual benefits derived from this relationship further emphasize the symbiotic relationship between Flock Safety, Ohio's main law enforcement agency, and the local police it oversees.

47

### h. Flock Safety's Actions Directly Led to the Unlawful Seizure of Michael Smith

A "seizure" occurs under the Fourth Amendment when—given all of the circumstances surrounding a particular police encounter—a reasonable person would believe he was not free to leave.[27] That analysis is fact-specific and depends on, for example, "the particular police conduct at issue" and "the setting in which the conduct occurs."[28] Courts must view the facts "as a whole" and consider the totality of the circumstances surrounding the incident. Id.

Flock Safety caused the unlawful stop and seizure of the Appellant. Flock Safety was in the driver seat when it wrongly fetched Jackson Township officers via work phones and emails against the Appellant, skipping JTPD official dispatch review or approval. This flagging, which identified Smith as a human trafficking suspect, resulted in his detention for about an hour without probable cause because FLOCK dictated police actions against the Appellant.

FLOCK system, is now essentially a privatized warrant system. Typically, the warrant systems were a state function. But now FLOCK has provided the

---

[27] California v. Hodari D., 499 U.S. 621 (1991)
[28] Michigan v. Chesternut, 486 U.S. 567, 573 (1988)

private substitute for warrants, the flaggings of motorists. FLOCK's actions are the clearest example of being a state actor. Because when FLOCK sends a flag about a motorist, that motorist will likely be pulled over when police locate the motorist. The flagging by FLOCK result in detainments (180% increase in JTPD traffic stops), that's a pseudo private warrant system at that point just without the need to go to a judge or that a motorist committed a crime before being pulled over.

The flagging about the Appellant was neither verified nor accompanied by any disclaimer advising officers to confirm its validity. FLOCK's failure to ensure accuracy and its unchecked influence over police operations make it liable under § 1983.

Subtracting FLOCK Safety's intervention on February 25th, 2023, the Appellant would never been pulled over that night nor detained for human trafficking; FLOCK does not allege to the District Court that the Appellant committed a specific crime that warranted being pulled over, regardless of FLOCK's intervention. Nor does FLOCK allege a warrant or detainer existed for the Appellant.

### i.  A private company influenced government operations, and the State permitted it—an unprecedented situation. This Court should adopt a clarified framework.

This case presents a novel fact pattern that existing state-action tests do not fully account for. In light of rapidly expanding public-private surveillance partnerships, the Court should adopt a clarified framework that is a blend of symbolic and nexus test that reflects the operational realities of privatized enforcement triggers. This test ensures § 1983 remains a meaningful remedy when private vendors exercise functional control over government coercion mechanisms is a paid "Partner in fighting crime".

Allowing private entities like Flock Safety to operate as quasi-governmental agency without accountability poses systemic risks to due process. The tests do work as is, but a modified test to address the issue of these types of entwinement/nexus relationships with the State is warranted.

**j.   Flock Safety's Attempt to Evade Liability While Operating as a Quasi-Governmental Entity; thus, the District Court's decision must be reversed.**

Flock Safety cannot act as a quasi-official source for law enforcement and FLOCK benefits from close relationships with township law enforcement while simultaneously disavowing responsibility when its actions lead to constitutional violations. As the Supreme Court held, "Wyatt reaffirmed that § 1983 can sometimes impose liability upon a private individual. 504 U.S., at 162, 112 S.Ct., at 1830; see also Lugar v. Edmondson Oil Co., 457 U.S. 922, 924, 102 S.Ct. 2744, 2746–2747, 73 L.Ed.2d 482 (1982)."[29]

These allegations—along with reasonable inferences drawn from them—are sufficient at the pleading stage to state a claim of 1983 violations by a private party with its vast influence over government operations and abuse of government resources.

It cannot be said that the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable theory." [30]

---

[29] Richardson v. McKnight, 521 U.S. 399, 403, 117 S. Ct. 2100, 2103, 138 L. Ed. 2d 540 (1997)
[30] Mendiondo, 521 F.3d at 1104

Further, the Complaint does not contain only blanket assertions or "formulaic recitation" of the elements of a cause of action. Iqbal, 129 S. Ct. at 1949. The cause of action is clear and not complex – that a private party influenced government operations, which gave rise to the violations of Michael Smith's rights.

Statistics show the rise of high-priority traffic stops (using Jackson Township public records) because the State encourages FLOCK's influence over police operations. Courts have long recognized that statistics, adequately analyzed, can support different types of claims.

In Simpson v. Midland-Ross Corp, this Court stated, " Statistical evidence, such as that offered by Simpson, does not differ greatly from other types of proof. It is relevant, even when believed, only if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R. Evid. 401.

Statistics gain relevance in one of two ways: the statistics, standing alone, reasonably lead to a particular conclusion validated by human experience, or comparative statistics point out discrepancies in behavior that would cause the average person to scrutinize the employer's motives*** "In short, their usefulness

depends on all of the surrounding facts and circumstances." Teamsters v. United States, 431 U.S. 324, 340, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396 (1977)." [31]

The District Court's decision must be reversed to ensure that private entities operating as quasi-official sources for law enforcement and state actors are held accountable for their constitutional violations.

## 3. THE DISTRICT COURT ERRORED IN DISMISSING MICHAEL SMITH'S PLAUSIBLE STATE CLAIMS AS THE COMPLAINT ALLEGES INJURIES RESULTING FROM FLOCK'S ACTIONS.

The Complaint adequately pleads the state law claims except for the claim of negligent infliction of emotional distress. Based on evidence obtained from multiple law enforcement agencies and news reports, the dismissal of these claims—aside from the negligent infliction of emotional distress—was erroneous and should be reversed for further proceedings before the District Court.

The Appellant raised the following several product liability claims under the Ohio Revised Code:

---

[31] Simpson v. Midland-Ross Corp., 823 F.2d 937, 941 (6th Cir. 1987)

### a. Design Defect

The defective nature of FLOCK's product and its failure to ensure accurate information from its license plate recognition (LPR) system makes Flock Safety liable under Ohio product liability principles. Flock Safety's LPR system disseminated false and defamatory information about the Plaintiff, Michael Smith, by flagging him as wanted for being a suspect in human trafficking. (Alert Email, RE 21-9, PageID #: 705)

The District Court dismissed these product liability claims under the theory that "Plaintiff's issue with the product is that it did not do more than it was designed to do. ECF No. 21 at PageID #: 630. That does not make the product defective." However, the District Court does not provide case law supporting this proclamation; rather, there is case law refuting it.

"*** To the contrary, R.C. 2307.75 fully contemplates that a manufacturer may be liable for failing to use a feasible alternative design that would have

prevented harm caused by an unintended but reasonably foreseeable use of its product. See R.C. 2307.75(B)(1) and (3) (C)(2) and (F)"[32]

Even if Smith was not the "intended user," FLOCK, lacking proper safeguards, harmed him by transmitting a false flagging to law enforcement, bypassing traditional dispatch and triggering an immediate police response.

The product was defective because of FLOCK's carelessness. Anyone seeing the flagging, including just the case number, will recognize its lack of credibility. This defect caused Smith's wrongful detention, as law enforcement relied on the inaccurate flagging to initiate a high-priority traffic stop.

Under Ohio's product liability statutes, a product is defective if it fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

FLOCK's LPR system failed to meet standards because it spread unverified, false information, a risk predictable given its use by law enforcement. Flock Safety's marketing led consumers to believe its system was reliable and accurate, so unexpected critical errors were not anticipated. The failure to disclose these

---

[32] Perkins v. Wilkinson Sivord, Inc., 1998-Ohio-16, 83 Ohio St. 3d 507, 513, 700 N.E. 2d 1247, 1252

representations constitutes a breach of the implied warranty of safety and reliability.

FLOCK failed to warn drivers like the Appellant that the system may cause detainment because of false information, which this was. FLOCK Safety failed to provide adequate warnings about the potential risks associated with its product.

The Appellee fails to include a clear warning on the camera poles that the flagging it may send can be erroneous, nor does it inform officers that flagging lack probable cause on the flagging itself. Instead, it deliberately omits this crucial information from the flaggings and camera poles themselves, providing only a small probable cause disclaimer on a webpage that few people are likely ever to visit.

This hidden warning on a webpage inadvertently acknowledges that the Appellees are aware that police officers often act on these flagging immediately without the officers understanding that they do not constitute probable cause because FLOCK does not have any warning about probable cause outside the obscure webpage (Warning, RE 21-39, PageID #: 831).

The company did not disclose to the drivers the possibility of false flagging on the camera poles or the lack of robust data validation mechanisms, leaving law

enforcement and the public unaware of the system's dangers. This failure to warn exacerbated the harm caused by the defective product. Law enforcement officers acted on the false flagging without questioning its validity because of FLOCK's influence over police operations.

Flock Safety's liability arises from the defective system design of its LPR system, its failure to conform to representations about the product's reliability, and its failure to warn users of the risks associated with false flagging. These actions resulted in the Plaintiff's wrongful detention and the harm to his reputation, making Flock Safety liable under product liability principles.

### b. Failure to Warn

The Appellant claimed Flock Safety failed to sufficiently warn law enforcement and bystanders, including himself, about the potential for inaccurate flagging. Ohio law imposes a duty on manufacturers to warn of risks associated with their products that were known or should have been known at the time of marketing. In Crislip[33], the Ohio Supreme Court set forth a manufacturer's duty in the context of a failure-to-warn claim premised on either negligence or strict liability.

---

[33] 52 Ohio St.3d 251, 556 N.E.2d 1177

The Court, employing Sections 388 and 402A of Restatement of the Law 2d, Torts (1965), at 300-301 and 347, held that "[i]n a products liability case where a claimant seeks recovery for failure to warn or warn adequately, it must be proven that the manufacturer knew, or should have known, in the exercise of ordinary care, of the risk or hazard about which it failed to warn. Further, there will be no liability unless it [can] be shown that the manufacturer failed to take the precautions that a reasonable person would take in presenting the product to the public." Crislip at 257.

The Appellant alleged that Flock Safety's omission of disclaimers on flagging contributed to his injuries.

### c. Nonconformance with Representations

The Appellant alleged that Flock Safety misrepresented the safety and reliability of its product, leading him to suffer harm when the product failed to perform as advertised. This claim aligns with Ohio Revised Code § 2307.77, which holds manufacturers liable for products that fail to conform to their representations to the public that FLOCK represented was safe (Complaint, RE 21, PageID #: 629) ("FLOCK declares that "Flock Safety is a public safety operating system***")

### d. Defamation

The Appellant's claims of Defamation per se, Defamation per quod, and libel per se stemmed from Flock Safety's false and defamatory flagging to law enforcement, which falsely connected him to being wanted for human trafficking.

Under Ohio law, Defamation requires proof of a false statement, publication to a third party, fault amounting to at least negligence, and harm to the Plaintiff's reputation. Looking at the flagging, there are no two meanings; it accuses the Appellant of being a human trafficker.

"Several federal diversity opinions in Ohio adopted the "innocent construction rule." According to this rule, if allegedly defamatory words are susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted. See, e.g., England v. Automatic Canteen Co. (C.A. 6, 1965), 349 F.2d 989"[34]

The Appellant's claims satisfy the standard because the false flagging implicated him in serious criminal activity. Even if FLOCK was not the original "author" of the speech, FLOCK still had a duty to ensure the content was not defamatory before disseminating it. To hold otherwise would create a dangerous loophole—allowing non-media entities like FLOCK to avoid liability for

---

[34] Yeager v. Local Union 20, 6 Ohio St. 3d 369, 372 (Ohio 1983)

publishing defamatory statements, even though FLOCK is not a traditional press or a social media platform.

FLOCK cannot avoid responsibility by claiming it was only broadcasting someone else's message. Publishing information without verifying accuracy and sending them to law enforcement is a publication. Third Parties like JTPD received FLOCK's speech. Emailing or texting third parties doesn't give FLOCK immunity from Ohio defamation and libel laws. FLOCK didn't verify or retract the false information. Instead, FLOCK doubled down, and still is, denying responsibility for its actions.

FLOCK may argue it was forced to say what it was told—that the Appellant was really wanted for human trafficking, but no warrant or detainer existed. But such reasoning fails. For arguendo, even if someone tells FLOCK that "Smith started a fire and is wanted for being an arsonist!" FLOCK is not compelled to echo that alarm—especially when there is no fire, no smoke, and no evidence that Smith ever started a fire. The responsibility lies with the party who chooses to repeat and broadcast the claim, especially to *law enforcement*, where it causes serious reputational harm.

FLOCK acted voluntarily, without coercion, when it shared false information to the JTPD. FLOCK has freedom of speech but not freedom from the consequences of its non-protected speech.

60

Holding FLOCK liable for Defamation and libel is in perfect harmony with the legislature's intent under O.R.C. § 2739. The public interest undoubtedly favors the principle that those who publish speech—especially speech implicating someone in a crime—must vet that speech; otherwise, that person can be held responsible for Defamation.

### e.   Intentional Infliction of Emotional Distress (IIED)

The Appellant alleged that Flock Safety's conduct in disseminating false and defamatory information was extreme and outrageous. What FLOCK did here in distributing the false flagging was unconscionable and harmed the Appellant emotionally for no reason. To establish a claim for IIED under Ohio law, a plaintiff must show that the Defendant's conduct was so extreme and outrageous as to go beyond all bounds of decency. The Plaintiff's claims exceed these standards.

### f.   Unjust Enrichment

The Appellant claimed that Flock Safety unjustly enriched itself by using his personal information, including his license plate data, birth date, and name (the same information found in the flagging), without his consent. Under Ohio law, unjust enrichment occurs when one party retains a benefit conferred by another under circumstances where it would be unjust to do so.

61

The Appellant alleged that Flock Safety profited from selling access to his data through its API for hundreds of thousands of dollars, thereby retaining a benefit that rightfully belonged to him. The amount of API users who pay hundreds of thousands of dollars for access to the data will equal a sizable sum in restitution for the benefit gained by FLOCK for the Appellant. Without data from citizens such as the Appellant, such as birth dates, license plate numbers, and names, the API subscription would be worthless.

"[U]njust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another."[35]

The Second Amendment reflects that there is no genuine issue of material fact that FLOCK sold access to its API, which contained the Appellant's data. FLOCK received a benefit from the Appellant driving by the cameras.

It would be unjust for Appellee to retain the financial benefit of Smith's data without compensating him for the value of his data. See Fortney v. McQuillen[36] at

¶ 20 ("[U]njust enrichment entitles a party to restitution of the reasonable value of the benefit conferred.")

---

[35] Hummel v. Hummel, 133 Ohio St.520, 528, 14 N.E.2d 923 (1938)
[36] 5th Dist. Ashland No. 19-COA-025, 2019-Ohio-4941

Nor does the Appellant have to plead a value of his personal information.[37] The Appellant has pled enough facts in the Complaint for unjust enrichment to survive the motion to dismiss stage.

**g. Fraudulent Concealment**

The Appellant alleged that Flock Safety fraudulently concealed material facts about its product, including its potential to disseminate false information, and that FLOCK is selling drivers' information (FLOCK Article, RE 21-37, PageID #: 826. "We never share or sell the data)

The Appellant argued that Flock Safety's failure to disclose that they are selling drivers' data with personal information (which is crosschecked on NCIC and other databases which FLOCK has integration with) these concealments led to his harm as drivers would be warier of driving by these cameras if they know their data is being sold.

When a driver drives by a camera, the FLOCK camera parses the plate info into readable text data for the API. That plate number gets crosschecked to NCIC/ State databases such as the DMV to find out the registered owner's identifying details. The data is then stored in the API and sold, selling access to the driver's license plate/personal information.

_____

[37] Landham, 227 F.3d 619, 624 (6th Cir. 2000)

The Ohio statute defines "personal information" as "information that identifies an individual, including, but not limited to, an individual's photograph or digital image, social security number, driver or driver's license identification number, name, telephone number ***." R.C. 4501.27(F)(3); see also R.C. 4501.27(F)(5) (defining "sensitive personal information"). We have here on the flagging that the Appellants' personal information is being sold within the API.

## h. Conversion

The Appellant brought a claim for conversion, asserting that Flock Safety wrongfully exercised control over his personal information, including his license plate data, without authorization. The District Court dismissed this claim, finding that the Appellant failed to identify a tangible or intangible asset subject to conversion. But Smith's data and personal information qualify, and FLOCK sold it.

The Appellant has sufficiently pled claims for product liability, Defamation, intentional infliction of emotional distress, and other state law causes of action to warrant a full and fair adjudication on the merits.

Here, the state law claims were supported by factual allegations that, if proven, would entitle him to relief. The Complaint gives sufficient notice to the other side about the conduct for which they are being sued.

### i.  Summary

The District Court's dismissal of these 1983 and State claims was wrong. Indeed, even the District Court *does not* allege that any of the claims are not plausible.

A Motion to dismiss pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein[38] or using unauthenticated documents on PACER from a separate case. The District Court errored in granting the Defendant's Motion to dismiss using unauthenticated PACER documents (RE 38). It's also procedurally unfair to the third party who wrote those court pleadings for FLOCK to download them from PACER and use them.

Again, "[s]pecific facts are not necessary"; the Complaint need only give defendants fair notice of the nature of the claim and the grounds on which it rests. Twombly, 550 U.S. at 555. The main crux behind the District Court's reasoning to dismiss was using outside pleadings, which are referenced multiple times throughout the Order.

_____

[38] Peatross, 818 F.3d at 240

Hearsay evidence cannot be considered on a motion for summary judgment[39], so it shouldn't be considered against the Appellant at the motion to dismiss stage, as it is still unauthenticated hearsay as "its statements, other than one made by the FLOCK *** offered in evidence to prove the truth of the matter asserted." 801(c).

This Court shouldn't consider those unauthenticated outside pleadings in determining whether plausible claims are made; the Complaint can stand by itself. Reversal is warranted as a Complaint's plausibility should *never* be contingent on whether FLOCK can find a PACER pleading from other cases; it is absurd.

Also, the District Court *never* alleged that the Plaintiff wouldn't be able to prove any facts in support of his claim.[40] Neither the District Court nor FLOCK alleges that the Complaint *does not* give fair notice of the conduct at issue in accordance with Twombly, 550 U.S. at 555.

FLOCK's exchanging it collective knowledge with JTPD to be JTPD's "Partner in fighting crime", FLOCK actions was the sole reason for the traffic stop, which led to the violation of the Appellant's liberty and freedom of movement. FLOCK has the paid privilege to accuse motorists of having

_____

[39] Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999)
[40] Haines v. Kerner, 404 U.S. 519, 520–21 (1972) (per curiam) (cleaned up)

committed crimes and sharing information directly to the police, but also, in the same breath, wants to absolve itself from *all* responsibility when its marching orders are entirely false and result in an unlawful detainment.

When FLOCK issues a flag on a vehicle, it effectively implicates the motorist in criminal activity—without any form of due process. Unlike speed or red-light cameras, which passively record traffic violations and issue citations days or weeks later and then you can dispute it in Court but FLOCK's system prompts immediate law enforcement intervention. Even when the flagged vehicle is not being driven by the registered owner, police are alerted in real-time and commanded to act.

Unlike speed cameras, FLOCK does not witness any offense firsthand; it merely transmits a flag based on FLOCK's own data. The motorist has no opportunity—either before or after the stop—to challenge the accuracy of the flag. A motorist at least has an opportunity to dispute a speed camera ticket in court after, but a motorist can't for a FLOCK flag as, such as the Appellant where no crime was *ever* committed, there is no Court hearing on the mere fact a motorist has been flagged by FLOCK, even though its FLOCK's data. FLOCK want's the motorist to just "deal with it" and let bygones be bygones afterwards.

FLOCK wants to tell police who to pull over but also prevent the ability for those motorists to seek *any* recourse in the court of law to hold FLOCK

67

accountable for the harm FLOCK caused by its own actions. FLOCK is self-aware that people get arrested/ detained because of its flagging system. This is so prevalent that FLOCK asks for this particular data point from the police, it requests "The number of cases cleared by arrest where FLOCK **contributed**" (emphasis added)(Marketing Help Email, RE 21-32, PageID #: 794).

FLOCK is under contract lease ALPR cameras but became JTPD "Partner in fighting crime" where FLOCK being provided by JTPD with special law enforcement powers and authority (NCIC) beyond those possessed by ordinary citizens and bystander-witnesses. JTPD encouragement allowing FLOCK special access to JTPD resources and officer contacts where FLOCK is permitted to give every flagging high-intensity police responses, FLOCK goes beyond the idea of the Contract to lease APLR devices. (Complaint, RE 21, PageID #: 610).

FLOCK unilaterally initiates the alerts which are not screened beforehand and JTPD officers executes them within seconds without independent discretion. JTPD depends on FLOCK for operational decisions on the motorists to pull over based on the flag's information.

While each of FLOCK's actions might appear benign in isolation, their cumulative effect reveals FLOCK functioning as a de facto state actor with the encouragement of the State. Only when all FLOCK's actions viewed together—as

68

FLOCK bypasses dispatch protocols, directs police operations, and influences

policy—does the true scope of its government-like authority become clear.

## CONCLUSION

Appellant respectfully requests that this Court reverse and remand the

District Court's dismissal and reinstate his Fourth, Fifth, and Fourteenth

Amendment claims under 42 U.S.C. § 1983, as well as his state law claims. The

Appellee's invited error in submitting unauthenticated PACER pleadings in

violation of Rule 12(d)—extrinsic hearsay that the District Court improperly relied

on—justifies this relief. Since the hearsay is obvious, the plain error backstop

would apply even if the issue wasn't directly preserved.[41]

A reverse and remand is needed to fix the procedural error that tainted the

lower Court's ruling, which the Appellee invited. No doubt, the outside pleadings

influenced the outcome, but the Appellant couldn't respond with outside evidence

since the Court didn't convert the motion to a Summary judgment. FLOCK is very

passionate about using outside pleadings, but a motion to dismiss is not the time

nor place for it.

Reversal and remand is still warranted irrespective of outside pleadings, Mr.

Smith's claims of constitutional violations under § 1983 and state law violations

---

[41] Reynolds v. Green, 184 F.3d 589, 594 (6th Cir.1999)

Case: 25-3287    Document: 11    Filed: 05/02/2025    Page: 80

require further factual development through discovery to fully assess the breadth of FLOCK's entwinement with the State. FLOCK's actions, in this case, are similar to those of a quasi-state agency and should be held accountable as state actors due to its full government support and functional authority. Both FLOCK and JTPD act as one unit.

FLOCK's actions under color of the law violated Mr. Smith's constitutional rights, and no legal test applies to this unique form of public-private entwinement, so this Court should modify the ones currently to account in the future for these unique entwinement issues that will likely be re-occurring.

If this Court finds no viable federal claim but viable State claims, it should still reverse and remand the case, but to transfer the remaining state law claims to the proper venue, at Stark County Common Pleas for future proceedings.

Dated: May 02, 2025

Respectfully submitted,

s/

MICHAEL SMITH

1225 SKYLINE DR APT 105

ORRVILLE OH 44667

*PRO SE APPELLANT*

## TYPE-VOLUME CERTIFICATION

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), Michael Smith hereby certifies that this brief complies with the type-volume limitation in Rule 32(a)(7)(B) because, as counted by the Microsoft Word 2024 word count tool, this brief contains 12,980 words (including image text) and excluding the parts exempted by Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirements in Rule 32(a)(5)(A) and the type-style requirements in Rule 32(a)(6) because this brief has been prepared in proportionally spaced 14-point Times New Roman font.

Dated: May 2, 2025

s/

_____

MICHAEL SMITH

# DESIGNATION OF RELEVANT
# DISTRICT COURT DOCUMENTS

| <u>Record Entry</u> | <u>Date</u> | <u>Description</u> |
| --- | --- | --- |
| 21 | 01/25/2024 | Appellant's Second Amended Complaint |
| 21-1 | 01/25/2024 | FLOCK email to buy ALPR data |
| 21-3 | 01/25/2024 | Case Study |
| 21-5 | 01/25/2024 | NCIC inquiry email |
| 21-6 | 01/25/2024 | NCIC Purpose webpage |
| 21-9 | 01/25/2024 | FLOCK alert email |
| 21-10 | 01/25/2024 | Protection Order FLOCK alert |
| 21-11 | 01/25/2024 | Jackson Township Police Report |
| 21-22 | 01/25/2024 | Email to Police to help FLOCK |
| 21-23 | 01/25/2024 | Email about Attorney General Grants to Police |
| 21-24 | 01/25/2024 | FLOCK Contract |
| 21-26 | 01/25/2024 | FLOCK job postings |
| 21-28 | 01/25/2024 | News Article about FLOCK |
| 21-30 | 01/25/2024 | FLOCK Email asking for reference letters |

| | | |
|---|---|---|
| 21-32 | 01/25/2024 | FLOCK Asking for help with Marketing, Email. |
| 21-34 | 01/25/2024 | FLOCK brochure |
| 21-37 | 01/25/2024 | FLOCK webpage disclaimer about not selling data |
| 21-39 | 01/25/2024 | Webpage Disclaimer |
| 22 | 02/08/2024 | FLOCK Motion to Dismiss |
| 22-1 | 02/08/2024 | Exhibit from the Motion to Dismiss, which is an outside pleading |
| 32 | 03/11/2024 | Opposition to FLOCK's Motion to Dismiss |
| 38 | 4/15/2024 | Memorandum of Opinion and Order granting the Defendant's motion to dismiss |
| 40 | 4/25/2024 | Appellant's motion to alter/amend judgment with Memorandum in support |
| 46 | 03/20/2025 | Opinion and Order Denying Motion |
| 48 | 04/14/2025 | Amended Notice of Appeal |

IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH
CIRCUIT

| | |
|---|---|
| MICHAEL SMITH, | |
| Appellant, | |
| v. | Case No. |
| FLOCK GROUP INC, | 25-3287 |
| Appellee, | |

MICHAEL SMITH hereby certifies the following under the penalty of perjury:

On May 2, 2025, I filed the foregoing document electronically, and it It is available for viewing and downloading from the ECF system. Service was accomplished by means of Notice of Electronic Filing upon:

Michael Pest

Dated at Cleveland, Ohio, this   02 day of May
2025

s/ _____
MICHAEL SMITH