UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

No. 25-3287

---

**MICHAEL SMITH**
*Plaintiff-Appellant,*

v.

**FLOCK GROUP, INC.**
*Defendant-Appellee.*

---

**BRIEF OF APPELLEE FLOCK GROUP, INC.**

---

Appeal from the Orders of the United States District
Court for the Northern District of Ohio Dismissing
Michael Smith's Second Amended Complaint and
Denying Smith's Motion to Alter or Amend Judgment
at Case No. 5:23-cv-2198

---

Michael P. Pest
DUANE MORRIS LLP
625 Liberty Avenue
Suite 1000
Pittsburgh, PA 15222
(412) 497-1000

Leah A. Mintz
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1000

*Counsel for Flock Group, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 25-3287                    Case Name: Michael Smith v. Flock Group, Inc.

Name of counsel: Michael P. Pest, Leah A. Mintz

Pursuant to 6th Cir. R. 26.1, Flock Group, Inc.
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ July 2, 2025 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Michael P. Pest
Duane Morris LLP, 625 Liberty Ave
Ste 1000, Pittsburgh, PA 15222

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

**6th Cir. R. 26.1**
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

(a)  **Parties Required to Make Disclosure**.  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

(b)  **Financial Interest to Be Disclosed**.

(1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2)  Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

**(c)  Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

# TABLE OF CONTENTS

**Page**

STATEMENT IN OPPOSITION TO ORAL ARGUMENT..................................... 1

INTRODUCTION.................................................................................. 2

COUNTER-STATEMENT OF THE ISSUES PRESENTED FOR REVIEW......... 4

COUNTER-STATEMENT OF THE CASE.................................................... 5

I.     Factual Background .................................................................. 5

    A.     Flock's License Plate Recognition Cameras............................... 5

    B.     The Underlying Traffic Stop .................................................. 6

    C.     Smith's Action Against the JTPD ........................................... 7

II.    Relevant Procedural History....................................................... 7

    A.     Smith's Action Against Flock ................................................ 7

    B.     Allegations in the Second Amended Complaint......................... 8

    C.     The District Court's Dismissal Order....................................... 9

SUMMARY OF THE ARGUMENT.......................................................... 12

ARGUMENT ..................................................................................... 13

I.     The District Court Properly Took Judicial Notice of the *Haddadin* Case.......... 13

II.    The District Court Correctly Dismissed Smith's Section 1983 Claims............. 18

    A.     Smith Fails to Allege the Deprivation of any Constitutional Right by Flock.......................................................... 20

    B.     In any Event, Flock Is Not a State Actor Subject to Section 1983 Liability ........................................................ 24

III.   The District Court Correctly Dismissed Smith's State Law Claims ................. 28

    A.     Products Liability............................................................. 28

    B.     Defamation..................................................................... 31

    C.     Intentional Infliction of Emotional Distress ........................... 32

    D.     Unjust Enrichment, Conversion, and Fraudulent Concealment............ 33

CONCLUSION ................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adickes v. S.H. Kress & Co.*
398 U.S. 144 (1970) ........................................................................26-27

*Ahghazali v. Sec'y of HHS*
867 F.2d 921 (6th Cir. 1989) ...................................................... 16, 19

*Anderson v. County of Hamilton*
780 F. Supp. 2d 635 (S.D. Ohio 2011)............................................ 23

*Bates v. Green Farms Condo. Ass'n*
958 F.3d 470 (6th Cir. 2020) ............................................................ 18

*Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*
531 U.S. 288 (2001) ........................................................................... 25

*Brooks v. Tennessee*
626 F.3d 878 (6th Cir. 2010) ............................................................ 33

*Broyles v. Kasper Mach. Co.*
517 F. App'x 345 (6th Cir. 2013) ..................................................... 30

*Buck v. Thomas M. Cooley Law School*
597 F.3d 812 (6th Cir. 2010) ............................................................ 15

*Byrd v. Wilson*
701 F.2d 592 (6th Cir. 1983) ............................................................ 12

*Cahill ex rel. Cahill v. Live Nation*
866 F. Supp. 2d 503 (W.D. Pa. 2011)...........................................21-22

*Ciraci v. J.M. Smucker Company*
62 F.4th 278 (6th Cir. 2023) ............................................................. 26

*Collins v. Womancare*
878 F.2d 1145 (9th Cir. 1989) .......................................................... 22

*Doe v. Michigan State University*
989 F.3d 418 (6th Cir. 2021) ........................................................30, 33

*Electronic Merchant Systems LLC v. Gaal*
    58 F.4th 877 (6th Cir. 2023) ........................................................................ 17

*Ellison v. Garbarino*
    48 F.3d 192 (6th Cir. 1995)......................................................................... 25

*England v. Automatic Canteen Co. of America*
    349 F.2d 989 (6th Cir. 1965) ...................................................................... 31

*Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*
    983 F.3d 307 (7th Cir. 2020) ...................................................................... 18

*Granader v. Public Bank*
    417 F.2d 75 (6th Cir. 1969)......................................................................... 14

*Greco v. Livingston County*
    774 F.3d 1061 (6th Cir. 2014) ............................................................... 21, 25

*Hummel v. Hummel*
    14 N.E.2d 923 (Ohio 1938)......................................................................... 34

*In re Omnicare, Inc. Securities Litigation*
    769 F.3d 455 (6th Cir. 2014) ...................................................................... 17

*Johnson v. Microsoft Corp.*
    834 N.E.2d 791 (Ohio 2005)....................................................................... 34

*Kansas v. Glover*
    589 U.S. 376 (2020) .................................................................................... 23

*Kelley v. Ferraro*
    936 N.E. 2d 986 (Ohio Ct. App. 2010)....................................................... 34

*Kovac v. Superior Dairy, Inc.*
    930 F. Supp. 2d 857 (N.D. Ohio 2013) ...................................................... 32

*Long v. Ford Motor Co.*
    193 F. App'x 497 (6th Cir. 2006)................................................................ 32

*Lugar v. Edmondson Oil Co.*
    457 U.S. 922 (1982) .................................................................................... 27

*Lyons v. Stovall*
    188 F.3d 327 (6th Cir. 1999) ...................................................................... 14

*Manhattan Community Access Corp. v. Halleck*
  587 U.S. 802 (2019) ........................................................................... 26

*Marie v. Am. Red Cross*
  771 F.3d 344 (6th Cir. 2014) ........................................................ 25, 27

*Moldowan v. City of Warren*
  578 F.3d 351 (6th Cir. 2009) .............................................................. 22

*New England Health Care Employees Pension Fund v. Ernst & Young, LLP*
  336 F.3d 495 (6th Cir. 2003) .............................................................. 15

*NPF IV, Inc. v. Transitional Health Services*
  922 F. Supp. 77 (S.D. Ohio 1996) ..................................................... 34

*Paugh v. R.J. Reynolds Tobacco Co.*
  834 F. Supp. 228 (N.D. Ohio 1993) .................................................. 30

*Rendell–Baker v. Kohn*
  457 U.S. 830 (1982) ........................................................................... 25

*Richards v. St. Thomas Hosp.*
  492 N.E. 2d 821 (Ohio 1986) ............................................................ 35

*Rodic v. Thistledown Racing Club, Inc.*
  615 F.2d 736 (6th Cir. 1980) ......................................................... 14-15

*Rodriguez v. Winski*
  973 F. Supp. 2d 411 (S.D.N.Y. 2013) ............................................... 22

*Shapiro v. City of Glen Cove*
  236 F. App'x. 645 (2d Cir. 2007) ..................................................... 22

*Smith v. Haddadin*
  No. 5:23 CV 1171 (N.D. Ohio) .............................. 4, 7, 13-16, 18-19, 23

*Sygula v. Regency Hosp. of Cleveland E.*
  64 N.E. 3d 458 (Ohio Ct. App. 2016) ............................................... 31

*Tahfs v. Proctor*
  316 F.3d 584 (6th Cir. 2003) .................................................. 21, 24-25

*Talley v. Family Dollar Stores of Ohio, Inc.*
  542 F.3d 1099 (6th Cir. 2008) ........................................................... 32

v

*Tate v. Comrie*
    No. 5:16-cv-3090, 2018 WL 1409288 (N.D. Ohio Mar. 21, 2018) ......................... 25

*Thomas v. Noder-Love*
    621 F. App'x 825 (6th Cir. 2015) .................................................................. 15

*U.S. ex rel. Sheldon v. Kettering Health Network*
    816 F.3d 399 (6th Cir. 2016) ...................................................................... 20

*United States v. Ferguson*
    681 F.3d 826 (6th Cir. 2012) ...................................................................... 17

*United States v. Houston*
    813 F.3d 282 (6th Cir. 2016) ...................................................................... 34

*United States v. Price*
    383 U.S. 787 (1966) .................................................................................. 27

*Vistein v. Am. Registry of Radiologic Technologists*
    342 F. App'x. 113 (6th Cir. 2009) ................................................................ 24

*Volbers-Klarich v. Middletown Mgt., Inc.*
    929 N.E.2d 434 (Ohio 2010) ....................................................................... 34

*Walton v. Claybridge Homeowners Ass'n*
    No. 1:21-cv-1313, 2021 WL 4895325 (S.D. Ind. Oct. 20, 2021) ........................... 26

*Wilcher v. City of Akron*
    498 F.3d 516 (6th Cir. 2007) ...................................................................... 27

*Wolotsky v. Huhn*
    960 F.2d 1331 (6th Cir. 1992) ............................................................ 21, 24-25

*Young v. Suffolk Cnty.*
    705 F. Supp. 2d 183 (E.D.N.Y. 2010) .......................................................... 23

**STATUTES**

28 U.S.C. § 1915(a) ........................................................................................ 12

28 U.S.C. § 1915(a)(3) ................................................................................. 1, 12

42 U.S.C. § 1983 ................................................................................... *passim*

O.R.C. §§ 2307.71-2307.80.................................................................... 28

O.R.C. § 2307.74.................................................................................... 28

O.R.C. § 2307.75(A)............................................................................... 28

O.R.C. § 2307.76(A)............................................................................... 29

O.R.C. § 2307.77.................................................................................29-30

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. IV............................................................................... 9

U.S. Const. amend. V ........................................................................9, 20-21

U.S. Const. amend. XIV ...................................................................... 9, 20

**RULES**

Fed. R. App. P. 28(b)(1)(A)(i) ................................................................ 39

Fed. R. App. P. 32(a)(5) ......................................................................... 37

Fed. R. App. P. 32(a)(6) ......................................................................... 37

Fed. R. App. P. 32(a)(7)(B)..................................................................... 37

Fed. R. Civ. P. 12(b)(6) .............................................................. 3-4, 8, 12, 15

Fed. R. Evid. 201 .................................................................................. 14

Fed. R. Evid. 201(b) ............................................................................. 14

Fed. R. Evid. 201(c)-(d) ........................................................................ 14

**OTHER AUTHORITIES**

CHARLES A. WRIGHT *et al.*, *Federal Practice and Procedure § 1364* (3d ed. Supp. 2019)
............................................................................................................ 18

**STATEMENT IN OPPOSITION TO ORAL ARGUMENT**

Flock submits that the issues presented in this appeal are straightforward and that oral argument is not necessary, particularly in light of the District Court's certification that an appeal could not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).  However, if the Court is inclined to grant Smith's request for oral argument, Flock requests an opportunity to participate as well.

**INTRODUCTION**

This case arises from a traffic stop of Smith's vehicle by the Jackson Township (Ohio) Police Department ("JTPD"). On February 25, 2023, the JTPD pulled over Smith's vehicle and briefly detained Smith, who had been listed as a suspect in connection with a police investigation concerning a missing juvenile. After determining that Smith was no longer the subject of any active investigation, the JTPD released him without incident, after approximately 45 minutes. Smith sued Jackson Township and the four officers involved in the traffic stop for alleged violations of 42 U.S.C. § 1983 and state law, and the case ultimately settled. Those facts are all matters of public record and are not in dispute.

As his lawsuit against the JTPD concluded, Smith attempted a second bite of the apple and filed the underlying action against Flock, the seller of the license plate recognition ("LPR") camera that photographed Smith's vehicle on the date in question and alerted the JTPD to the car's location. Smith's lawsuit against Flock similarly alleged violations of 42 U.S.C. § 1983, in addition to various products liability, defamation, and other tort claims.

Smith's theories of liability as to Flock are – charitably speaking – absurd. His argument can be summarized as follows: as a result of some still-unspecified "defect," Flock's LPR camera "malfunctioned" and selected Smith's license plate completely at random, then incorrectly linked his license plate number to an entirely unrelated criminal investigation, and then somehow generated and disseminated false and

2

defamatory information about Smith to the JTPD, while simultaneously "dictating" that the JTPD detain Smith. Smith contends that Flock's camera did all of this without any input whatsoever by the JTPD, and that the JTPD had no ability to exercise independent judgment once it received the notification from the Flock system. The District Court rejected this wildly implausible theory and instead adopted the only logical explanation for the Flock alert at issue – that the JTPD entered Smith's license plate information into the Flock system and directed the system to send an alert upon detection of that license plate number. As the District Court recognized, Flock's involvement terminated at the moment that the alert was sent, and the question of whether the JTPD acted reasonably during Smith's brief detention does not extend to Flock. Accordingly, the District Court correctly dismissed Smith's claims with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

On appeal, Smith focuses primarily on the issue of whether Flock is a "state actor" subject to Section 1983 liability. This Court need not even reach that issue because Smith failed to adequately plead that Flock deprived him of any constitutional right. The Flock LPR camera at issue merely took a photograph of Smith's vehicle on a public street and conveyed objective information (*i.e.*, the location of Smith's vehicle) to the JTPD, based on the JTPD's instructions. Smith cannot state a Section 1983 claim for that reason alone. In any event, Smith's "state actor" arguments fail because he describes nothing more than a typical relationship between a private service provider and a public buyer of those services. Smith's repeated assertions that Flock's system

3

somehow has the ability to independently target a particular vehicle and then "dictate" subsequent police actions are palpably meritless.

Smith's remaining claims for alleged violations of Ohio products liability law and for various common law torts are equally unavailing. After three iterations of his Complaint and a 70-page appeal brief, Smith has yet to identify any defect in Flock's system or to plausibly attribute any defamatory or other tortious conduct to Flock.

For those reasons, and the reasons articulated below, Flock respectfully requests that this Court affirm the District Court's April 15, 2024 and March 20, 2025 Orders.

## COUNTER-STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.    Did the District Court properly take judicial notice of *Smith v. Haddadin*, No. 5:23 CV 1171 (N.D. Ohio), which is based on the same underlying facts as the instant case?

2.    Did the District Court correctly dismiss Smith's claims for violations of 42 U.S.C. § 1983 because Smith failed to plead that Flock deprived him of any constitutional right and because Flock is not a "state actor" subject to liability under Section 1983?

3.    Did the District Court correctly dismiss Smith's remaining state law claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)?

## COUNTER-STATEMENT OF THE CASE

### I.    Factual Background

### A.    Flock's License Plate Recognition Cameras

Flock is a seller and service provider of LPR cameras.  (Memorandum of Opinion and Order Granting Flock's Motion to Dismiss ("Opinion & Order"), R. 38, PageID 1004.)    Flock sells its LPR cameras to public safety organizations, including law enforcement agencies.  (*Id.*; *see also* Second Amended Complaint ("SAC"), R. 21, PageID 600 at ¶ 100.)  Flock's LPR cameras capture only objective evidence, such as license plates and vehicle information, and do not utilize facial recognition technology. (Opinion & Order, R. 38, PageID 1004; SAC, R. 21, PageID 637, ¶ 269.)    Only authorized users can access the Flock system, and every search in the Flock system requires a search reason, which is collected in a publicly available audit.  (*Id.*)  No unauthorized users, including Flock's employees, have access to the footage captured by Flock's LPR cameras.  (*Id.*)

Flock's LPR cameras are connected to the FBI's National Crime Information Center ("NCIC") "Hot List."  (Opinion & Order, R. 38, PageID 1004.)  Flock users also have the ability to create custom Hot Lists.  (SAC, Ex. HH, R. 21-34, PageID 803.) Flock's LPR cameras feature Hot List alerts, which "notify law enforcement when a known suspect's vehicle is in the area" and "work by connecting Flock cameras with data from the [NCIC *and local law enforcement agencies*.*"  (SAC, Ex. G, R. 21-7, PageID 700-701) (emphasis added).    Critically (and logically), the Flock system does not

generate the information that triggers the alert; the Flock system merely matches license plate images with information that is already entered into the system by the end user. (Opinion & Order, R. 38, PageID 1005; *see also* SAC, Ex. H, R. 21-8, PageID 703 ("upon detection, the Flock Service creates images and recordings of suspect vehicles … and can provide notifications to Agency *upon the instructions of Non-Agency End User.*") (emphasis added)).

### B.    The Underlying Traffic Stop

On February 25, 2023, a Flock LPR camera located in Canton, Ohio captured an image of Smith's vehicle's license plate, which matched information on the JTPD "hot list."  (Opinion & Order, R. 38, PageID 1005.)  The Flock system then sent a notification to the JTPD, which subsequently initiated a traffic stop of Smith's vehicle. (*Id.*)  After confirming that Smith was no longer the subject of an investigation, the JTPD allowed Smith to leave the scene without incident.  (*Id.*)  The entire interaction lasted less than one hour.  (Opinion & Order, R. 38, PageID 1006.)[1]

---

[1] Smith's allegations about the circumstances of the underlying traffic stop are sparse. The "facts" alleged in each version of his Complaint consist primarily of gross misrepresentations about Flock's product.  Smith employs largely the same strategy in his Brief.  For instance, he asserts that Flock's camera "identified [him] as a suspect and effectively commanded his detention;" that the camera "determines, without JTPD review, who is flagged as a suspect;" and that JTPD "does not exercise discretion in this process," among many, many other misstatements.  (*See* Appellant's Br. at 5, 9.)  For the reasons discussed herein and in the District Court's Opinion and Order, such allegations are illogical and meritless.

### C.    Smith's Action Against the JTPD

On June 12, 2023, prior to initiating his lawsuit against Flock, Smith commenced

an action against Jackson Township and the four Jackson Township police officers who

conducted the traffic stop at issue.  (Opinion & Order, R. 38, PageID 1002) (citing

*Smith v. Haddadin*, No. 5:23 CV 1171 (N.D. Ohio) ("*Haddadin*")).  The filings in *Haddadin*

reveal the following:

- On or about February 13, 2023, the Cleveland Division of Police ("CDP") opened an investigation concerning a missing juvenile;

- In connection with CDP's investigation, which involved coordination among multiple law enforcement agencies, the JTPD entered Smith's license plate and information into a "hotlist" in its LPR system;

- CDP's investigation terminated on February 23, 2023 at approximately 11:00 a.m., when the missing juvenile was located at an area hospital; and

- On February 25, 2023, at 4:38 a.m., the Department initiated a traffic stop of Smith's vehicle based on an LPR alert, but after learning from CDP and other external authorities that the missing juvenile had been found, permitted Smith to leave without incident.

(Opinion & Order, R. 38, PageID 1005; *see also* SAC, Ex. I, R. 21-9, PageID 705; Motion

to Dismiss SAC, Ex. A, R. 22-1, PageID 860-868; 875-876.)  The parties settled the

*Haddadin* case on November 8, 2023.  (Opinion & Order, R. 38, PageID 1002.)

## II.    Relevant Procedural History

### A.    Smith's Action Against Flock

On November 13, 2023, Smith commenced the underlying action by filing a

Complaint asserting various constitutional, products liability, and common law tort

7

claims against Flock, based on the JTPD's February 25, 2023 traffic stop. (Complaint, R. 1, PageID 1-148.)

On December 6, 2023, Flock moved to dismiss Smith's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Motion to Dismiss, R. 7, PageID 168-230.) In its Motion, Flock argued, *inter alia*, that it is not a "state actor" subject to liability under 42 U.S.C. § 1983; that Smith failed to allege any defect or failure to warn that could plausibly give rise to any products liability claim; and that Smith failed state a claim for any common law tort because he did not allege any false statement by Flock. (*Id.* at PageID 178-190.)

In response, Smith filed his First Amended Complaint on December 14, 2023. (First Amended Complaint ("FAC"), R. 10, PageID 235-305.) On December 28, 2023, Flock again moved to dismiss on the same grounds as its initial Motion. (Motion to Dismiss FAC, R. 11, PageID 401-465.) On January 25, 2024, Smith filed the operative Second Amended Complaint. (SAC, R. 21, PageID 567-831.)[2]

## B.    Allegations in the Second Amended Complaint

In the Second Amended Complaint, Smith alleged that, on February 25, 2023, the Flock camera at issue "malfunctioned and disseminated false and defamatory information" about him to the JTPD. (SAC, R. 21, PageID 586, ¶ 58.) In a self-serving

---

[2] On January 19, 2024, Smith sought permission to file a Second Amended Complaint in order to "remove … irrelevant figures and words" from the prior version of his Complaint. Instead of removing irrelevant information, Smith added more than 250 paragraphs and 15 exhibits to his Second Amended Complaint. (*See* Motion to Dismiss SAC, R. 22, PageID 837.)

attempt to demonstrate the camera's purported "defect," Smith asserted that he was a "user" of the Flock system because he "drove by Jackson Township cameras multiple times before February 25[,] 2023 without issue" but, in this particular instance, "the camera simply malfunctioned." (*Id.* at PageID 586, ¶ 60.) According to Smith, Flock's alert "caused the police to apprehend [Smith] without any proven misconduct" and violated Smith's Fourth, Fifth, and Fourteenth Amendment rights. (*Id.* at PageID 648, ¶ 329; PageID 663-666, ¶¶ 423-442.)

The Second Amended Complaint asserted the following causes of action against Flock: negligence (Count I); strict products liability under Ohio law based on design defect, manufacturing defect, failure to warn, and "defect due to nonconformance with representation" theories (Counts II-V); libel per se (Count VI); false light invasion of privacy (Count VII); intentional and negligent infliction of emotional distress (Counts VIII-IX); common law misappropriation of name and likeness (Count X); defamation per se and per quod (Counts XI-XII); violations of 42 U.S.C. § 1983 (Counts XV-XVI); unjust enrichment (Count XVII); fraudulent concealment (Count XVIII) and conversion (Count XIX). (Opinion & Order, R. 38, PageID 1006-1008.)[3]

### C.    The District Court's Dismissal Order

Flock again moved to dismiss. (Motion to Dismiss SAC, R. 22, PageID 832-896.) Following briefing on Flock's Motion, on April 15, 2024, the District Court issued

---

[3] The Second Amended Complaint omitted Counts XIII and XIV.

its Opinion & Order dismissing the Second Amended Complaint with prejudice. (Opinion & Order, R. 38, PageID 1002-1022.) First, the District Court rejected Smith's Section 1983 claims because: (1) Smith failed to allege facts sufficient to suggest that Flock can be considered a "state actor" for purposes of Section 1983; and (2) Smith failed to allege facts supporting a plausible claim that Flock violated any of Smith's constitutional rights. (*Id.* at PageID 1011-1013.)

The District Court dismissed Smith's design and manufacturing defect claims because Smith failed to allege facts that could plausibly support a finding that the Flock camera at issue was defective or that it differed materially from otherwise identical units. (*Id.* at PageID 1014-1015.) Moreover, the Court held that those claims were subject to dismissal because Flock's camera "did not cause the injury of which [Smith] complains." (*Id.* at PageID 1015.) The Court dismissed the failure to warn and nonconformance with representation claims because Flock "did not make any representations to [Smith]" and "did not owe [Smith] a duty to warn him" because Smith was neither the purchaser nor user of the product. (*Id.* at PageID 1016.) As the District Court held, "[t]he agencies purchasing [Flock's] cameras would be the recipients of any warnings if such warnings were required." (*Id.*)

The District Court dismissed Smith's remaining state law claims for multiple reasons. The District Court dismissed Smith's negligence claim because Smith "failed to establish that Defendant owed him a duty to independently investigate law enforcement information and retract an alert," and because Flock did not cause Smith's

alleged injuries.  (Opinion & Order, R. 38, PageID 1016.)  With respect to the libel, defamation, invasion of privacy claims, and fraudulent concealment counts, the District Court held that Smith failed to state viable claims because Flock did not publish false information; Flock's camera conveyed only true information (images of Smith's license plate and vehicle), which was generated by law enforcement, not Flock.  (*Id.* at PageID 1016-1017, 1020.)  The Court dismissed Smith's misappropriation claims because Smith's likeness was not captured by the LPR camera, he failed to allege facts suggesting that his name was used by Flock for its benefit, and he failed to demonstrate that his name has any commercial value.  (*Id.* at PageID 1018.)  The Court dismissed Smith's claims for intentional and negligent infliction of emotional distress because Flock's "act of capturing the image of Plaintiff's vehicle and license plate, matching it to data provided to it by law enforcement and then alerting law enforcement to the match is not outrageous and extreme behavior," and because Smith did not plausibly allege that he experienced emotional distress as a result of Flock's actions that placed another individual in real danger.  (*Id.* at PageID 1019.)  The Court dismissed Smith's unjust enrichment claim because no economic transaction occurred between Smith and Flock.  (*Id.* at PageID 1020.)  Finally, the Court dismissed Smith's conversion claim because Smith failed to plausibly allege the existence of any tangible or intangible property rights that could be subject to conversion.  (*Id.* at PageID 1021.)

11

The District Court's Opinion and Order included a certification pursuant to 28 U.S.C. § 1915(a)(3)[4] that an appeal from the decision could not be taken in good faith. (Opinion & Order, R. 38, PageID 1022.)  Nevertheless, this appeal by Smith followed. (Notice of Appeal, R. 47, PageID 1293-1300; Amended Notice of Appeal, R. 48, Page ID 1301.)[5]

## SUMMARY OF THE ARGUMENT

The District Court correctly dismissed with prejudice Smith's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and correctly denied Smith's subsequent Motion to Alter or Amend Judgment.  Smith cannot state a claim under 42 U.S.C. § 1983 because he failed to plausibly allege any deprivation of his constitutional rights by

---

[4] 28 U.S.C. § 1915(a) provides that "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  A district court's determination that a claim is frivolous is a discretionary ruling; in reviewing such dismissal, however, the court of appeals must examine the *pro se* allegations to determine whether they are sufficient to overcome a charge of frivolousness.  *See Byrd v. Wilson*, 701 F.2d 592, 594 (6th Cir. 1983).  While Smith paid his filing fees and is no longer proceeding in forma pauperis, Flock submits that the District Court's finding of frivolousness is nonetheless instructive.

[5] Smith filed a Motion to Alter or Amend Judgment on April 25, 2024, and a Motion to Recuse on April 29, 2024.  (R. 40-41, PageID 1024-1045.)  On March 20, 2025, the District Court issued a separate Memorandum of Opinion and Order denying both motions.  (Opinion & Order, R. 46, PageID 1283-1292.)  While Smith's Amended Notice of Appeal (R. 48, PageID 1301) purports to appeal from both the District Court's April 15, 2024 and March 20, 2025 orders, his Brief contains only passing references to his Motion to Alter or Amend Judgment.  The District Court properly denied that motion because Smith did not demonstrate a clear error of law, an intervening change in the law, newly discovered evidence, or a manifest injustice. (Opinion & Order, R. 46, PageID 1289.)

Flock. Moreover, he failed to allege facts sufficient to establish that Flock is a "state actor" subject to Section 1983 liability. The District Court properly dismissed Smith's products liability claims because he alleged no plausible defect in the design or manufacture of the Flock camera at issue and because Flock had no duty to warn, nor made any representations to, Smith. The Court properly dismissed Smith's remaining state law claims because, *inter alia*, Smith failed to allege any actionable defamatory or other tortious conduct by Flock, and because none of Flock's alleged actions proximately caused Smith's purported harm. In reaching its conclusion, the District Court properly took judicial notice of public records referenced in the related *Haddadin* action.

In his Brief, Smith takes substantial liberties in describing the underlying facts, makes a series of material misrepresentations about Flock's product, adds allegations that were not raised in the operative Complaint, and repeatedly misstates the law. Even so, Smith cannot explain away the fundamental deficiencies in his claims against Flock. The Flock camera at issue took a photograph of Smith's vehicle on a public street and matched it to information supplied by the camera's end user. Smith cannot assert any viable cause of action against Flock based on those undisputed facts.

## ARGUMENT

## I.    The District Court Properly Took Judicial Notice of the *Haddadin* Case

Smith argues that the District Court committed "clear reversible error" by considering "unauthenticated documents outside the [p]leadings" without converting

13

Flock's Motion to Dismiss to a motion for summary judgment. (Appellant's Br. at 4, 24.) Specifically, Smith takes issue with the District Court's acknowledgment of public records referenced in the *Haddadin* case, which definitively disprove Smith's allegations in this case. Smith's arguments that the District Court erred in taking judicial notice of *Haddadin* are demonstrably meritless.

Federal Rule of Evidence 201 provides, in relevant part, that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b). The court "must take judicial notice if a party requests it and the court is supplied with the necessary information" and "may take judicial notice at any stage of the proceeding." *See* Fed. R. Evid. 201(c)-(d).

"It is well-settled that '[f]ederal courts may take judicial notice of proceedings in other courts of record.'" *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999) (citing *Granader v. Public Bank,* 417 F.2d 75, 82-83 (6th Cir. 1969); *see also Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir. 1980) ("Because this court sits to decide real cases, not abstract questions of law, and because an adequate understanding of a case is essential to our decision, we have examined the record in the [related] state court

[action] in an effort to ascertain the facts").[6]  It is equally well-settled that a court "ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records *or are otherwise appropriate for the taking of judicial notice*."  *See New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (emphasis added).  A court may consider such materials without converting a party's motion to dismiss into a motion for summary judgment.  *See, e.g., Thomas v. Noder-Love,* 621 F. App'x 825, 829 (6th Cir. 2015)*; Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010) ("when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment").

Here, Smith argues that the District Court erred in taking judicial notice of the *Haddadin* case.  Contrary to Smith's assertion, the *Haddadin* filings of which the District Court took notice are not random "pleadings ripped from another case."  (*See* Appellant's Br. at 24.)  *Haddadin* was filed by the same plaintiff, is based on the same traffic stop at issue in this case, involves the same claims at issue here, and provides key

---

[6] *Rodic* is particularly instructive.  In that case, the plaintiff (Rodic) filed an action under 42 U.S.C. § 1983 alleging that defendants denied him due process by banning him from Thistledown Racetrack without affording him a hearing.  The District Court agreed that Rodic was entitled to a hearing as to the duration of his expulsion.  On appeal, the Sixth Circuit took judicial notice that the appeal arose from the same facts that formed the basis for the judgment in a related state court action.  After reviewing the facts in the state court action – which revealed that Rodic's expulsion was permissible under state law and did not deprive him of any liberty or property interest – the Sixth Circuit reversed with instructions to dismiss the complaint.

details that Smith conveniently omitted from his Second Amended Complaint in this action. Critically, Smith attached to the *Haddadin* Complaint a copy of the Cleveland Division of Police's report, dated February 13, 2023 (ten days before the traffic stop at issue), which lists Smith as a subject of its investigation. (Motion to Dismiss SAC, Ex. A, R. 22-1, PageID 863-870.) That public record – which Smith himself attached to his pleading in *Haddadin* – refutes Smith's contention here that the "authorities never suspected [him] of any crime" (and that the Flock alert must have therefore been the result of some "defect" with the camera). (Appellant's Br. at 3.) It was certainly appropriate for the District Court to take judicial notice of documents and statements Smith himself made in other court proceedings involving the same incident. *See Ahghazali v. Sec'y of HHS*, 867 F.2d 921, 927 (6th Cir. 1989) ("Statements in pleadings that acknowledge the truth of some matter alleged by an opposing party are judicial admissions binding on the party making them."). Further, in a subsequent filing, the JTPD acknowledged that report and admitted that "*JTPD entered Plaintiff's license plate and information into a 'hotlist' in the [Flock] ALPR system.*" (Motion to Dismiss SAC, Ex. A, R. 22-1, PageID 875-876) (emphasis added).

This is the only plausible explanation for how the Flock system could have had Smith's vehicle information and instructions to alert the JTPD to the vehicle's location. Smith's arguments that the Flock system somehow generated his vehicle information on its own and then disseminated "defamatory" information to the JTPD is not plausible. The undisputed facts and public records referenced in the *Haddadin* case

16

merely confirm the lone plausible explanation for the Flock alert and eliminate any doubt that the JTPD directed the Flock system to send an alert to the JTPD upon detection of Smith's license plate number.  Under Sixth Circuit law, it was proper for the District Court to take judicial notice of those public records and admissions from a related case in the same court, based on the same underlying incident.  *See, e.g., Electronic Merchant Systems LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) (courts may consider public records for the truth of the statements contained within them when the contents prove facts whose accuracy cannot be reasonably questioned); *United States v. Ferguson*, 681 F.3d 826, 834-35 (6th Cir. 2012) (judicial notice is appropriate where, as here, the matter is "beyond reasonable dispute").[7]

Contrary to Smith's assertion that Flock's "legal defense strategy hinges *entirely* on these unauthenticated exhibits" (Appellant's Br. at 31) (emphasis in original), there are numerous, independent grounds supporting the dismissal with prejudice of all of his claims.  The dismissal of Smith's Second Amended Complaint was warranted because Smith failed to plead (indeed, cannot plead) the elements necessary to state plausible claims.  The dismissal of Smith's claims was by no means dependent on

---

[7] The cases cited by Smith on this point do not support his argument.  In *Ferguson*, this Court *granted* the government's request to take judicial notice of the felony information and plea agreement from the appellant's prior criminal case.  681 F.3d at 834-35.  In *In re Omnicare, Inc. Securities Litigation*, 769 F.3d 455 (6th Cir. 2014), this Court denied the plaintiff/appellant's request to take judicial notice of SEC filings because the request constituted an improper attempt to supplement the complaint on appeal and circumvent the Federal Rules of Civil Procedure.

information from the *Haddadin* case. Any information gleaned from *Haddadin* merely lends additional support to the District Court's holding. Thus, in the event that this Court determines that the District Court erred in taking judicial notice of *Haddadin*, any error was harmless and does not warrant reversal. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 484 (6th Cir. 2020) ("[E]rror will be treated as harmless if the dismissal can be justified without reference to any extraneous matters.") (quoting 5C CHARLES A. WRIGHT *et al.*, *Federal Practice and Procedure § 1364*, at 63 (3d ed. Supp. 2019)); *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) (explaining that "a district court's failure to treat the motion as one for summary judgment does not require reversal if the error was harmless").

## II.   The District Court Correctly Dismissed Smith's Section 1983 Claims

Smith argues that the District Court erred in dismissing his Section 1983 claims because, according to Smith, he alleged facts sufficient to demonstrate that: (1) Flock violated his constitutional rights; and (2) Flock qualifies as a "state actor" for Section 1983 purposes. Smith's arguments are based almost entirely on a series of blatant misrepresentations about the Flock system's capabilities, Flock's relationship with law enforcement agencies, and the underlying facts of the case. Smith baselessly asserts, for example, that:

- Flock exercises "vast influence" over JTPD actions and "violates people's rights by dictating police actions" (Appellant's Br. at 3);

- A Flock alert functions "exactly like" a police warrant by identifying a suspect and "effectively command[ing]" the suspect's detention (*id.* at 5;

*see also id.* at 48 (the Flock system "is now essentially a privatized warrant system"));

- Flock's alerts are not "user generated" (*id.* at 7);

- "Flock determines, without JTPD review, who is flagged as a suspect, and that determination triggers JTPD action. JTPD does not exercise discretion in this process." (*id.* at 9);

- "JTPD has delegated its authority of initiation of seizures to a private system" (*id.*); and

- Flock has "unhindered access to government data, grants, assets, and support." (*id.* at 17.)

Throughout this case, Smith has devoted dozens of pages to repeating those demonstrably false claims.[8]  Regardless of how many times Smith restates his unsubstantiated claims, he cannot change these fundamental facts: a Flock LPR camera merely "matche[s] data provided to captured images," the camera can only send alerts based on the instructions of the end user, and Flock has no further involvement once the camera sends an alert to the camera's end user.  (Opinion & Order, R. 38, PageID

---

[8] In fact, Smith's own pleadings in *Haddadin* contradict the narrative Smith attempts to portray here.  In *Haddadin*, Smith alleged, among other things, that "FLOCK ALPR Alerts itself are unreliable 'tips' to law enforcement that are only used to identify a determinate vehicle"; that the Flock alert "was from a custom hot list that Cleveland Police shares with Jackson Township Police"; and that JTPD "had a policy in place addressing ALPR alerts," stating that "Officers should verify all ALPR alerts through LEADS/NCIC before taking enforcement action that is based solely upon an ALPR alert." *See Haddadin*, No. 5:23 CV 1171 (N.D. Ohio), Second Amended Complaint, Doc. No. 7, ¶¶ 20, 49, 53. Smith's prior pleadings provide additional support for the District Court's decision to dismiss the Second Amended Complaint with prejudice.  *See Ahghazali*, 867 F.2d at 927.

1011-1012). The District Court properly rejected Smith's misrepresentations, correctly held that Flock did not cause any damages to Smith and, in any event, is not a state actor subject to Section 1983 liability.[9]

### A. Smith Fails to Allege the Deprivation of any Constitutional Right by Flock

In Count XV of the Second Amended Complaint, Smith alleged that Flock violated his Fourth and Fourteenth Amendment rights "by working alongside the state and reporting false information," resulting in his detainment. (SAC, R. 21, PageID 664, ¶ 428.) In Count XVI, Smith similarly alleged that Flock violated his Fifth and Fourteenth Amendment rights by "depriv[ing] the Plaintiff of his liberty based on false information, without a fair process to challenge the accuracy of that information before the deprivation occurred." (*Id.* at PageID 666, ¶ 442.)

On appeal, Smith contends that the District Court erred in concluding that Flock "did not detain Smith" because Flock purportedly "failed to sufficiently verify" the accuracy of its alert and displayed a "reckless disregard" for citizens' due process rights. (*See* Appellant's Br. at 36-37.) With respect to his Fifth Amendment claim, Smith argues

---

[9] Smith appears to argue that the District Court applied the incorrect standard of review. *See* Appellant's Br. at 34 (stating repeatedly that Smith's claims are not subject to a "heightened pleading standard."). However, Flock never argued for the application of a "heightened pleading standard." The District Court correctly dismissed the case under the *Iqbal/Twombly* standard. Contrary to Smith's apparent position, that standard does not require a court to accept wholly implausible or unwarranted inferences at the motion to dismiss stage. *See U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 409 (6th Cir. 2016).

that Flock "committed actions that led to the deprivation of Smith's property" because Flock "took Smith's data" and allegedly "sold access" to this unspecified data.[10] (*Id.* at 39.) Smith's arguments fail for multiple reasons.

"Under 42 U.S.C. § 1983, a plaintiff must allege that he was deprived of a right secured by the Federal Constitution or laws of the United States by a person acting under color of state law." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). A plaintiff may not proceed under Section 1983 against a private party, but, in limited circumstances, private persons may, by their actions, become "state actors" for Section 1983 purposes. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). "For the purpose of attaching section 1983 liability to a private actor for actions allegedly taken under the color of state law, the focus is on the specific constitutional deprivation as alleged." *Cahill ex rel. Cahill v. Live Nation*, 866 F. Supp. 2d 503, 512 (W.D. Pa. 2011). "Key to the analysis beyond the existence of a private party/public authority arrangement is the additional requirement of a private party's judgment serving as the deciding impetus for the specific state action being taken." *Id.* at 511. In other words, "[t]he private party's judgment, as opposed to the state acting police officer's judgment, would have to have

---

[10] The Fifth Amendment arguments in Smith's Brief are entirely new arguments. Smith's Fifth Amendment claims in the District Court were based on Flock's alleged dissemination of "false information, without a fair process to challenge the accuracy of that information before the deprivation occurred." (SAC, R. 21, PageID 666, ¶ 442.) The alleged Fifth Amendment violations were not based on the purported taking and sale of Smith's "data." It is well-established that an appellant cannot raise new issues for the first time on appeal. *See Greco v. Livingston County*, 774 F.3d 1061, 1064 (6th Cir. 2014) (noting that arguments not raised in the district court are forfeited on appeal).

caused the deprivation" in order for Section 1983 liability to attach to the private party. *Id.* at 512; *see also Shapiro v. City of Glen Cove*, 236 F. App'x. 645, 647 (2d Cir. 2007) (declining to hold private actor liable for Section 1983 violation where officials exercised independent judgment rather than acting at private actor's direction); *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989) (same).

Here, as the District Court correctly recognized, Flock's involvement in the underlying incident ended the moment that it sent the alert to the JTPD. In transmitting that alert, Flock merely conveyed objective information (*i.e.*, the location of Smith's vehicle) to the JTPD. (Opinion & Order, R. 38, PageID 1012-1013.) Flock played no role whatsoever in "detaining" Smith and was not involved in the underlying criminal investigation. (*Id.* at PageID 1013.) Flock has no ability to "dictate" a police department's actions. It was the JTPD's exercise of independent judgment - both in entering Smith's information onto its Hot List and subsequently acting on that information - that was the "deciding impetus" for the traffic stop. Thus, the District Court correctly held that "the question of whether the [JTPD] acted reasonably when they briefly detained [Smith] does not extend to [Flock]." *Id.* This holding is consistent with the long line of cases stating that the mere provision of information to law enforcement does not expose a private actor to Section 1983 liability. *See, e.g., Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009); *see also Rodriguez v. Winski*, 973 F. Supp. 2d 411, 422 (S.D.N.Y. 2013) (summoning police or requesting that police take action "simply does not suffice to … to convert the private party into a state actor");

*Anderson v. County of Hamilton*, 780 F. Supp. 2d 635, 646 (S.D. Ohio 2011) (dismissing Section 1983 claim against witness who summoned police); *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 196 (E.D.N.Y. 2010) (holding that even the provision of *false* information to police, alone, is not actionable under Section 1983).

Smith's argument that Flock deprived him of his liberty by "failing to verify every alert through NCIC" does not withstand scrutiny.[11]  (*See* Appellant's Br. at 36.)  The Flock system is connected to, and pulls information from, the NCIC.  There is no way to independently verify information that is obtained from the NCIC database.  Moreover, the NCIC is just one database from which the Flock system and other LPR cameras obtain information; every criminal suspect in every jurisdiction is not necessarily listed in the NCIC at any given moment.  Such was the case here.  As the JTPD explained in the *Haddadin* case:

> Law enforcement decision-making is not predicated on computer databases, traffic cameras, or technology alone – as the Supreme Court explained in [*Kansas v. Glover*, 589 U.S. 376 (2020)], police officers rely on their common-sense inferences when assessing criminal activity. *Glover,* 140 S. Ct. 1183. ***Even if Smith's name had been checked in LEADS and NCIC before the traffic stop, he would have been stopped anyway***, as those databases did not explain whether Smith remained a suspect or person of interest.

(Motion to Dismiss SAC, R. 22, PageID 850 (emphasis added).)

---

[11] Smith advances this same argument in support of his design defect claim.  That argument fails for the same reasons articulated below.

Smith failed to allege any plausible claim for the denial of any constitutional rights under the Fourth, Fifth, or Fourteenth Amendments.  Accordingly, the District Court correctly dismissed his Section 1983 claims.

### B.    In any Event, Flock Is Not a State Actor Subject to Section 1983 Liability

Even assuming that the JTPD's 45-minute traffic stop of Smith's vehicle constituted a deprivation of any of Smith's constitutional rights (it did not), and assuming that Flock played any role in that deprivation (it did not), Smith's claims nonetheless fail because Flock is not a "state actor" subject to liability under 42 U.S.C. § 1983.

As noted above, while, generally, a plaintiff may not proceed under Section 1983 against a private party, in limited circumstances, private persons may, by their actions, become "state actors" for Section 1983 purposes.  *Tahfs,* 316 F.3d at 590.  The principal inquiry in determining whether a private party's actions constitute "state action" for purposes of Section 1983 is whether the party's actions may be "fairly attributable to the state."  *Wolotsky*, 960 F.2d at 1335.

This Court has recognized as many as four tests to aid courts in determining whether challenged conduct is fairly attributable to the State: (1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test. *Vistein v. Am. Registry of Radiologic Technologists*, 342 F. App'x. 113,

24

127 (6th Cir. 2009) (citing *Wolotsky,* 960 F.2d at 1335; *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n,* 531 U.S. 288, 298 (2001)).

Here, Smith invokes the substantial nexus test.[12]  (Opinion & Order, R. 38, PageID 1011.)  "[T]he nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state." *Tahfs,* 316 F.3d at 591 (quoting *Ellison v. Garbarino,* 48 F.3d 192, 195 (6th Cir. 1995)).  As this Court has held, "neither '*significant or even total engagement in performing public contracts*' nor 'extensive and detailed' state regulation of a private entity creates a sufficient nexus between the state and the private entity."  *Tate v. Comrie,* No. 5:16-cv-3090, 2018 WL 1409288, at *6 (N.D. Ohio Mar. 21, 2018) (citing *Rendell–Baker v. Kohn,* 457 U.S. 830, 841 (1982) (emphasis added)); *see also Wolotsky,* 960 F.2d at 1336 (acts of private contractors do not become the acts of the government by reason of significant or even total engagement in performing public contracts).

Here, despite pages of rhetoric and hyperbole, Smith does nothing more than argue that Flock is a state actor because it markets its products to, and contracts with, various law enforcement and non-law enforcement agencies throughout Ohio.

---

[12] On appeal, Smith also appears to argue for the first time that Flock was performing a state function because Flock purportedly was acting as a dispatcher.  (*See* Appellant's Br. at 34.)  Smith did not raise any arguments under this test in the District Court, meaning that any argument is waived.  *See Greco,* 774 F.3d at 1064.  Regardless, any argument on this front would also be meritless.  *See Marie v. Am. Red Cross,* 771 F.3d 344, 362-63 (6th Cir. 2014).

However, it is well-established that the mere existence of contracts with state agencies does not convert Flock into a state actor for purposes of Section 1983:

> Numerous private entities in America obtain government licenses, government contracts, or government-granted monopolies. If those facts sufficed to transform a private entity into a state actor, a large swath of private entities in America would suddenly be turned into state actors and be subject to a variety of constitutional constraints on their activities. As this Court's many state-action cases amply demonstrate, that is not the law.

*Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802, 814-15 (2019); *see also Ciraci v. J.M. Smucker Company,* 62 F.4th 278, 283-84 (6th Cir. 2023) ("Common experience and common sense" confirm that doing business with the government does not amount to a form of state action); *Walton v. Claybridge Homeowners Ass'n*, No. 1:21-cv-1313, 2021 WL 4895325, at *4-5 (S.D. Ind. Oct. 20, 2021) (dismissing with prejudice Section 1983 claims against Flock because neither the allegation that Flock furnished information to the government nor the conclusory statement that Flock was "acting as a Quasi-Governmental Agency" was sufficient to state a claim).  Thus, the District Court correctly held that Flock's "business relationships with various law enforcement agencies, alone, is not sufficient to meet the substantial nexus test." (Opinion & Order, R. 38, PageID 1012.)

The cases cited by Smith on this issue are inapposite.  In *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970), the Supreme Court reversed the dismissal of Section 1983 claims against a private entity where the discriminatory act in question was "compelled by a statutory provision or by a custom having the force of law," *i.e.*, where the State

"commanded the result by its law." *Id.* at 171; *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) (finding that private entity was a "state actor" for the same reason). Similarly, in *United States v. Price*, 383 U.S. 787 (1966), the Court held that private "participants in official lawlessness, acting in willful concert with state officers" were acting under color of law and thus subject to Section 1983 liability. *Id.* at 795. Here, Flock was neither compelled by the JTPD to effectuate a traffic stop nor participated in the JTPD's brief stop of Smith's vehicle. As the District Court recognized, Flock does not create the information on the JTPD's Hot List, and Flock's involvement ends the moment an alert is sent. (Opinion & Order, R. 38, PageID 1012.) Contrary to Smith's argument, Flock alerts to do not "function like a warrant;" an officer must have independent reasonable suspicion of criminal activity to conduct a traffic stop. (*Id.*)

Smith also includes a litany of claims that supposedly demonstrate a close relationship between Flock and various law enforcement agencies in Ohio. (*See* Appellant's Br. at 41-47.) The law is clear, however, that the substantial nexus test "evaluates whether 'there is a sufficiently close nexus between the state and *the challenged action.*'" *Marie*, 771 F.3d at 363 (emphasis in original) (quoting *Wilcher v. City of Akron*, 498 F.3d 516, 520 (6th Cir. 2007)). Smith never explains – let alone supports with specific allegations – how these supposed activities relate to Smith's detainment.

For those reasons, the District Court correctly dismissed Smith's claims under 42 U.S.C. § 1983.

## III.    The District Court Correctly Dismissed Smith's State Law Claims

### A.    Products Liability

Smith attributes the underlying traffic stop to some unspecified defect with Flock's camera, which Smith contends improperly "flagged" him as a suspect in a law enforcement investigation.  Without identifying any actual defect, Smith argues, *inter alia*, that Flock's camera "spread unverified, false information;" "fail[ed] to perform as safely as an ordinary consumer would expect;" and "failed to warn drivers like [Smith] that the system may cause detainment because of false information."  (*See* Appellant's Br. at 54-56.)  In the Second Amended Complaint, Smith asserted claims under Ohio's Products Liability Act, Ohio Revised Code §§ 2307.71-2307.80 ("OPLA") for design defect (Count II), manufacturing defect (Count III), failure to warn (Count IV), and "defect due to nonconformance with representation" (Count V).

Under the OPLA, a product is defective in manufacture or construction if it deviated in a material way from the manufacturer's design specifications, formula, or performance standards, or from otherwise identical units manufactured to the same specifications.  O.R.C. § 2307.74.  A product is defective in design or formulation if, at the time it left the control of its manufacturer, the foreseeable risks associated with its design or formulation exceeded the benefits associated with that design or formulation.  O.R.C. § 2307.75(A).  A product is defective due to inadequate warning or instruction if the manufacturer knew or should have known about a risk associated with the product that allegedly caused the claimant's harm and failed to provide a warning

28

concerning that risk.  O.R.C. § 2307.76(A).  Finally, a product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer.  O.R.C. § 2307.77.

Smith's products liability claims are meritless.  To be clear, the Flock camera's principal function is *taking photographs*.  The camera's software then matches those photographs with data input by the end user and sends an alert to the end user, based solely on the end user's instructions.  Here, the camera functioned as exactly as intended.  The camera does not exercise independent judgment and thus has no ability to "spread unverified false information."  Smith vaguely alleges various "defects" but ignores entirely that the Flock alert was sent pursuant to the JTPD's instructions.  As the District Court held:

> [Flock's] camera did not cause the injury of which [Smith] complains. [Flock's] camera did not create the "Hot List" or input the data. It merely transmitted the alert to local law enforcement. Law enforcement personnel have the responsibility to screen the information and act on it, if they see fit. Inaccurate information entered by law enforcement does not equate to a defect in [Flock's] product.

(Opinion & Order, R. 38, PageID 1015.)

Even ignoring that fundamental problem with Smith's products liability claims, the claims still fail.  The Second Amended Complaint did not contain a single plausible allegation of any deviation from design specifications, formula, or performance

standards, or from otherwise identical units manufactured to the same specifications.[13]

Smith's failure to warn arguments are similarly unavailing.  As the District Court recognized, Smith was not a purchaser or user of the Flock camera in question; thus, Flock had no duty to warn him about the product and made no representations to him about the product.  *See, e.g., Broyles v. Kasper Mach. Co.*, 517 F. App'x 345, 349 (6th Cir. 2013) (adequate warning is one "displayed in such a manner that a *typical product user* would observe and appreciate the warning" (emphasis added)); *Paugh v. R.J. Reynolds Tobacco Co.*, 834 F. Supp. 228, 232 (N.D. Ohio 1993) (affirming dismissal of claim under O.R.C. § 2307.77 where plaintiff did not identify the nature, extent, or language of any express representation made by defendant).  Smith's multiple complaints demonstrate that Flock provided ample warnings to its actual users, such as the JTPD.  (*See generally* Complaint, Ex. B, R. 1-2, PageID 64-83; *see also* SAC, R. 21, PageID 639, ¶ 281.)  Finally, Smith's failure to demonstrate that any alleged failure to warn or misrepresentation proximately caused his purported harm is fatal to his claims.

For those reasons, the District Court correctly dismissed Counts II through V of the Second Amended Complaint.

---

[13] Smith's Brief does not appear to address the dismissal of his manufacturing defect claim.  Accordingly, those arguments are waived on appeal.  *See Doe v. Michigan State University*, 989 F.3d 418, 425 (6th Cir. 2021) ("Generally, an appellant abandons all issues not raised and argued in its initial brief on appeal." (internal quotation marks omitted)).

## B.    Defamation

Smith's defamation claims are also demonstrably meritless.  "To prevail on a defamation claim, a plaintiff must prove five elements: (1) a false statement; (2) about the plaintiff; (3) published to a third-party; (4) with the required degree of fault by the defendant publisher; and (5) defamatory per se or defamatory per quod, causing special harm to the plaintiff."  *Sygula v. Regency Hosp. of Cleveland E.*, 64 N.E. 3d 458, 466 (Ohio Ct. App. 2016).  Smith fails to satisfy any of those elements.  The only information disseminated by Flock's camera to the JTPD (indeed, the only information that the camera is capable of disseminating) was a photograph of Smith's license plate and the location of his vehicle. That information was, indisputably, true.  This fact, alone, is fatal to Smith's defamation claim.  Moreover, the information was not "published to a third party."  Any information contained in the alert (beyond the vehicle's location) was the JTPD's own information that it entered into the Flock system.

Smith offers no argument that credibly refutes the District Court's holding. Curiously, he cites to a lone case discussing the "innocent construction rule," which provides that if words are susceptible of two meanings, the libelous meaning should be rejected and the innocent meaning adopted.  *See* Appellant's Br. at 59 (citing *England v. Automatic Canteen Co. of America*, 349 F.2d 989, 991 (6th Cir. 1965)).  To the extent that this rule has any applicability to these facts, it appears that the rule is favorable to Flock's position and does nothing to advance Smith's arguments.

Accordingly, the District Court properly dismissed Smith's defamation claims.

## C.    Intentional Infliction of Emotional Distress

In a single paragraph, Smith argues in conclusory fashion that Flock's purported conduct in "disseminating false and defamatory information was extreme and outrageous" and went "beyond all bounds of decency." (*See* Appellant's Br. at 61.) Smith's arguments lack merit, and the District Court properly dismissed his intentional infliction of emotional distress claim.

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must plead and prove that: (1) defendant intended to cause emotional distress to plaintiff or knew or should have known that its conduct would result in serious emotional distress to plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it. *Kovac v. Superior Dairy, Inc.* 930 F. Supp. 2d 857, 870 (N.D. Ohio 2013) (*citing Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1110 (6th Cir. 2008)). Conduct giving rise to a claim of intentional infliction of emotional distress must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kovac,* 930 F. Supp. 2d at 870 (*quoting Long v. Ford Motor Co.,* 193 F. App'x 497, 503 (6th Cir. 2006)).

32

Smith's conclusory allegations of "extreme and outrageous behavior" are plainly insufficient to state a claim for intentional infliction of emotional distress. As the District Court succinctly stated, "Defendant's act of capturing the image of Plaintiff's vehicle and license plate, matching it to data provided to it by law enforcement and then alerting law enforcement to the match is not outrageous and extreme behavior." (Opinion & Order, R. 38, PageID 1019.) Smith provides no argument or authority to contest this holding. As a result, Smith waived the issue on appeal. *See Brooks v. Tennessee*, 626 F.3d 878, 891 (6th Cir. 2010) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Accordingly, the District Court correctly dismissed Smith's claim for intentional infliction of emotional distress.[14]

### D. Unjust Enrichment, Conversion, and Fraudulent Concealment

Smith's claims for unjust enrichment, fraudulent concealment, and conversion are all premised on Smith's vague allegations that Flock "us[ed] his personal

---

[14] Smith concedes that he failed to state a claim for negligent infliction of emotional distress. *See* Appellant's Br. at 53 ("The Complaint adequately pleads the state law claims *except for the claim of negligent infliction of emotional distress.*" (emphasis added)). Smith's Brief fails to address at all his negligence, false light invasion of privacy, libel, and common law misappropriation claims. Accordingly, Smith has waived any appeal of the dismissal of those claims. *See Doe*, 989 F.3d at 425. Those claims were properly dismissed for the reasons articulated by the District Court.

information" without his consent and "sell[s] drivers' information." (*See* Appellant's Br. at 61-64.) The District Court properly dismissed each of these claims.

Unjust enrichment occurs "when a person 'has and retains money or benefits which in justice and equity belong to another.'" *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (citing *Hummel v. Hummel*, 14 N.E.2d 923, 927 (Ohio 1938)). "The elements of a conversion claim are: 1) plaintiff's ownership or right to possession of the property at the time of the conversion; 2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and 3) damages." *NPF IV, Inc. v. Transitional Health Services*, 922 F. Supp. 77, 81 (S.D. Ohio 1996). Conversion claims are generally limited to those based upon the taking of tangible, personal property. *Kelley v. Ferraro*, 936 N.E. 2d 986, 989 (Ohio Ct. App. 2010). Finally, a fraudulent concealment claim requires "(1) ... a concealment of a fact when there is a duty to disclose (2) that is material... (3)...with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance." *Volbers-Klarich v. Middletown Mgt., Inc.*, 929 N.E.2d 434, 440 (Ohio 2010).

Here, Smith's claims fail because he has not sufficiently or plausibly articulated what information he believes to have been "taken." His vehicle's location, and images of his vehicle and license plate number captured while he traveled on a public roadway, are not privately protected. (Opinion & Order, R. 38, PageID 1021); *see also United States*

*v. Houston*, 813 F.3d 282, 287-288 (6th Cir. 2016) (there is no reasonable expectation of privacy in footage recorded by a camera that "capture[s] the same views enjoyed by passersby on public roads").  Any remaining information in Flock's system is obtained from public law enforcement sources, which belies Smith's contention that Flock "sold" his information.  Finally, to the extent that Smith's fraudulent concealment claim is based on Flock's purported concealment of its "potential to disseminate false information," that claim fails because, again, Smith did not plausibly allege that any false information was disseminated.[15]

## CONCLUSION

For the foregoing reasons, the Court should affirm the District Court's Orders granting Flock's Motion to Dismiss Smith's Second Amended Complaint and denying Smith's Motion to Alter or Amend Judgment.

Dated: July 2, 2025

*/s/ Michael P. Pest*
Michael P. Pest
Duane Morris LLP
625 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222
(412) 497-1000

Leah A. Mintz
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1000
*Counsel for Flock Group, Inc.*

---

[15] Moreover, Ohio law arguably does not provide an independent cause of action for "fraudulent concealment."  The fraudulent concealment doctrine is relevant to the tolling of a statute of limitations, which is not at issue here. *See, e.g.*, *Richards v. St. Thomas Hosp.*, 492 N.E. 2d 821, 824 n.3 (Ohio 1986).

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,387 words, excluding the portions exempted by 6 Cir. R. 32(b)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared with a minimum font size of 14 point Garamond, a proportionally-spaced typeface, using Microsoft Office Word 2016.

Dated: July 2, 2025

*/s/ Michael P. Pest*
Michael P. Pest
Duane Morris LLP
625 Liberty Avenue
Suite 1000
Pittsburgh, PA 15222
(412) 497-1000

Leah A. Mintz
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1000

*Counsel for Flock Group, Inc.*

# CERTIFICATE OF SERVICE

I certify that on July 2, 2025, the foregoing Brief of Appellee Flock Group, Inc. was filed with the Clerk of Court for the United States District Court of Appeals for the Sixth Circuit via the Court's CM/ECF system, and a copy was served by U.S. Mail, postage prepaid, on the following:

Michael Smith
1225 Skyline Drive, Apt. 105
Orrville, OH 44667
*Appellant*

*/s/ Michael P. Pest*
Michael P. Pest
Duane Morris LLP
625 Liberty Ave, Suite 1000
Pittsburgh, PA 15222
(412) 497-1000

*Counsel for Flock Group, Inc.*

# ADDENDUM

Pursuant to Sixth Circuit Rules 28(b)(1)(A)(i) and 30(g)(1), Flock Group, Inc. has designated the following docket entries:

| Docket No. | Description | PageID Range |
|---|---|---|
| R. 1 | Complaint | PageID 1-148 |
| R. 7 | Motion to Dismiss | PageID 168-230 |
| R. 10 | First Amended Complaint | PageID 235-400 |
| R. 11 | Motion to Dismiss First Amended Complaint | PageID 401-465 |
| R. 21 | Second Amended Complaint | PageID 567-831 |
| R. 22 | Motion to Dismiss Second Amended Complaint | PageID 832-896 |
| R. 38 | Memorandum of Opinion and Order Granting Motion to Dismiss Second Amended Complaint | PageID 1002-1022 |
| R. 39 | Judgment | PageID 1023 |
| R. 40 | Motion to Alter or Amend Judgment | PageID 1024-1031 |
| R. 41 | Motion to Recuse | PageID 1032-1045 |
| R. 46 | Memorandum of Opinion and Order Denying Plaintiff's Motion to Alter or Amend Judgment and Motion to Recuse | PageID 1283-1292 |
| R. 47 | Notice of Appeal | PageID 1293-1300 |
| R. 48 | Amended Notice of Appeal | PageID 1301 |