**RECEIVED**
07/07/2025
KELLY L. STEPHENS, Clerk

**No. 25-3287**

# In the United States Court of Appeals
# for the Sixth Circuit

---

MICHAEL SMITH,

*Plaintiff-Appellant,*

- v. -

FLOCK GROUP INC,

*Defendant-Appellee,*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO,
THE HON BENITA Y PEARSON, PRESIDING
NO. 5:23-CV-02198.

---

REPLY BRIEF OF PLAINTIFF- APPELLANT

---

MICHAEL SMITH
1225 SKYLINE DR 105
ORRVILLE OH 44667
PRO SE APPELLANT

# TABLE OF CONTENTS

*TABLE OF AUTHORITIES* ..................................................................... iii

*INTRODUCTION* ................................................................................ 1

    a.   Appellee's Weaponization of Appellant poverty affidavit ........................... 1

*ARGUMENTS* ..................................................................................... 3

*1.   CONCESSION BY SILENCE: ISSUES APPELLEE FAILS TO CONTEST* ...... 3

    a.   Introduction ........................................................................... 3

    b.   It is unknown why the Appellee often punts to the District Court. ............. 11

    c.   Appellee doesn't detail what the Appellant raised for the "first time." ....... 16

    d.   In a heads-I-win-tails-you-lose Alice in Wonderland .................................. 18

    argument, Appellee now seeks to limit the Appellant ......................................... 18

    e.   Appellee adds words to the Appellants' mouths ........................................ 19

    f.   Appellee ignores statistics and facts .......................................................... 22

    g.   The Outside Pleadings are, yes, a reversal error itself ............................... 23

i

*1.   LIKE STATED IN THE OPENING BRIEF, THE REQUIREMENT THAT THE MOTION BE CONVERTED TO A SUMMARY JUDGMENT WHEN OUTSIDE MATTERS ARE CONSIDERED SHOULD BE STRICTLY ENFORCED.* .............. 24

    a.   Case law is readily available that refutes the Appellee's meritless position. .. ................................................................................................. 24

    b.   No investigation existed ............................................................ 25

*4    THE APPELLEE INVITED THE DISTRICT COURT TO MAKE A PREJUDICIAL ERROR WHEN IT DISMISSED THE COMPLAINT USING OUTSIDE PLEADINGS, APPELLEE CAN'T BENEFIT FROM IT.* ...................... 28

    a.   Standard of review ...................................................................... 28

    b.   The Appellee's position is incorrect regarding the pleadings being able to be introduced through judicial notice ...................................................... 28

    c.   The District Court deprived the Appellant of procedural fairness ............. 31

*5.   THE APPELLEE IS WRONG, THE COMPLAINT DOES STATE PLAUSIBLE CLAIMS UNDER 1983 AND STATE LAW.* .............................................................. 32

    a.   Introduction .............................................................................. 32

*6.   AN EVOLVED TEST IS NEEDED TO ADDRESS THESE UNIQUE RELATIONSHIPS.* ............................................................................. 34

*CONCLUSION* ..................................................................... *34*

*TYPE-VOLUME CERTIFICATION* ........................................ *36*

## TABLE OF AUTHORITIES

## CASES

Ahghazali v. Sec'y of HHS 867 F.2d 921 (6th Cir. 1989)......................................20

Coppedge v. United States, 369 U.S. 438 1962) .......................................................2

Corbin v. Baltimore & Ohio Railroad Co., 234 F.2d 78(6th Cir.1956) .................31

Courie v. Alcoa Wheel & Forged Products, 577 F.3d 625 (6th Cir.2009)..............28

DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104 (2d Cir. 2010);...........................30

Drummond v. Executors of Prestman, 25 U.S. 515 (1827)...................................30

Fabian v. Fulmer Helmets, Inc., 628 F.3d 278 ......................................................35

Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24 (2d

   Cir. 1988).........................................................................................................25

Mannheim Video, Inc. v. County of Cook, 884 F.2d 1043  (7th Cir. 1989)............17

McPherson v. Kelsey, 125 F.3d 989  (6th Cir. 1997)................................................3

Montgomery v. Vargo, 2016-Ohio-809, 60 N.E.3d 709 .........................................33

Moyer v. GEICO, No. 23-4015 (6th Cir. 2024) ......................................................29

United States v. Elder, 90 F.3d 1110  (6th Cir. 1996)..............................................14

United States v. Ferguson 681 F.3d 826 (6th Cir. 2012) ........................................15

United States v. Johnson, 440 F.3d 832 (6th Cir. 2006) ............................................6

Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429 (7th Cir. 1993)...22

Waeschle v. Dragovic (11-1878) (6th Cir. 2010).....................................................21

Walton v. Claybridge Homeowners Ass'n No. 1:21-cv-1313, 2021 WL 4895325

    (S.D. Ind. Oct. 20, 2021) ........................................................................................6

## STATUTES

18 U.S.C. §2722 ......................................................................................................10

28 U.S.C. § 1915(a)(3) .........................................................................................1, 35

42 U.S.C. § 1983 ................................................................................................12, 32

## RULES

F.R.A.P 34 .................................................................................................................2

Fed R. Evid 201(b) ..................................................................................................28

Fed. R. Civ. P. 12 .........................................................................................24, 25, 31

Fed. R. Civ. P. 12(d) .........................................................................................21, 23

Fed. R. Evid 201 ...............................................................................................23, 30

# INTRODUCTION

## a. Appellee's Weaponization of Appellant poverty affidavit

Ronald Reagan's famous rejoinder—"There you go again"—aptly captures the tenor of Appellee's brief. Incredibly, Appellee contends that the Appellant's in forma pauperis affidavit proves that the present appeal is not taken in good faith. See Appellee Br. 1, 12.  The attempt to weaponize the filing of a litigant's financial status is both unseemly and irrelevant: The appeal is paid for.

More fundamentally, Appellee cites no authority for the sweeping proposition that someone who attested (in confidence) to pauperis, can be weaponized to foreclose a paid appeal  Instead, Appellee deploys § 1915(a)(3) as a rhetorical "drive-by" in the oral-argument section and again in a footnote, hoping the bare citation alone will cast doubt on Appellant's bona fides. Such threadbare argumentation underscores, rather than conceals, the substantive weaknesses that follow.

Having started with this ill-founded argument, the remainder of Appellee's arguments fares no better—its introduction and the arguments that follow are likewise bereft of legal support.

Oral argument in the courts of appeals is governed exclusively by Federal Rule of Appellate Procedure 34—not by a statute addressing fee waivers for indigent litigants. This is not only incorrect but also reflects a misunderstanding by opposing counsel of the intent of a fee certification statute, which has no bearing on the merits of an appeal. To adopt Appellee's position would require a sweeping—and wholly unwarranted—policy shift. See *Coppedge v. United States*, 369 U.S. 438 (1962) ("The requirement that an appeal *in forma pauperis* be taken 'in good faith' is satisfied when the defendant seeks appellate review of any issue that is not frivolous. Pp. 444-445.").

Setting aside that untenable premise, Appellee subsequent attempts to cabin the issues before this Court by baldly asserting that several state-law causes of action have been "waived." The opening brief says otherwise. Appellant's Opening Brief expressly devoted multiple pages to demonstrating that "all state-law claims are adequately pleaded" (aside from negligent emotional distress) and that the district court improperly dismissed them by relying on disputed extrinsic materials. See Appellant Brief 53, 65–70. Appellee neither engages those arguments; instead, it simply pronounces the claims forfeited and abandons the issue.

This absurd waiver theory originates from the same party that attempted to use Appellant's financial status, which he disclosed in confidence, as evidence of bad

faith in a paid appeal. Such tactics do nothing to cure the substantive deficiencies identified in the Appellee brief and should be rejected.

## ARGUMENTS

### 1. CONCESSION BY SILENCE: ISSUES APPELLEE FAILS TO CONTEST

### a. Introduction

Reading the pro se brief liberally, this Court can see that the Appellant was not waiving any dismissal of his State claims. The Appellee is laser-focused on using excerpts from the district court's order and disputed outside pleadings rather than attempting to author any original arguments to address the arguments in the opening brief.

The argument from the Appellee of waiver only applies to the Appellee themselves. In this Circuit, in McPherson v. Kelsey ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the Court to . . . put flesh on its bones.") (citation omitted).

One sentences to characterize a swath of claims does not suffice (Appellee Brief Page 28) Because Appellee chose to use blanket assertions or deflect to the District Court order to argue against the Appellant. FLOCK themselves don't contest the following arguments, thus it is deemed conceded:

- The Appellant's Rule 12(d) argument (Appellant brief at pages 23-27)

- FLOCK owns the data it sends to the Police (Id at page 6, 67)

- FLOCK API has driver data, such as Smith's personal information (Id at page 6)

- The Appellee invited the trial court to make an error under the invited error doctrine (Id. at page 30)

- The Fifth- and Fourteenth-Amendment due-process claims.

- Monetization of Data

- Appellant disputed the outside pleadings at the trial court level when it was filed, thus not "undisputed" (Id at page 26)

- Its status as a de facto dispatcher and entwined state actor

- The Section 230 argument being held liable for defamation even if as a non-publisher (republisher-liability theory of defamation) (Id at page 7)

- The unjust-enrichment and fraudulent-concealment allegations tied to monetizing personal data

4

- The outrageousness element of the IIED claim

- That Flock exercises "vast influence" over JTPD actions and "violates people's rights by dictating police actions" (Id at page 3)

- Flock flagging functions "exactly like" a police warrant by identifying a suspect and "effectively command[ing]" the suspect's detention (Id. at page 5;18

- Appellee's flaggings are not "user-generated" (Id. at page 7);

- "Flock determines, without JTPD review, who is flagged as a suspect, and that determination triggers JTPD action. JTPD does not exercise discretion in this process." (Id. at page 9);

- "JTPD has delegated its authority of initiation of seizures to a private system" (Id. at page 9)

- Flock has "unhindered access to government data, grants, assets, and support." (Id. at page 17)

A court of appeals nor the Appellant "is not obliged to flesh out arguments that the [Appellee] has elected to leave undeveloped," *United States v. Johnson*, 440 F.3d 832 (6th Cir. 2006); instead, the unopposed grounds should be accepted as established.

Suppose the Appellee's invocation of 28 U.S.C. § 1915(a)(3) were not already enough to reveal their fundamentally distorted grasp of both law and fact. In that case, the Appellee erases all doubt and references a *district court case* (Walton v. Claybridge Homeowners Ass'n) as if it were a controlling precedent to dictate this appeal. (Appellee Brief page 35)

This irrelevant citation serves no more than a minor academic interest; this is a district court's order, not an appellate opinion. But to put the Appellee's distraction to rest, the Appellant will succulently address this unapplicable case. In this case, the Appellant has pleaded specific facts and presented documents to show State action, unlike those seen in Walton.

Even before reading the brief, starting at the oral argument section, there are blaring warning sirens, a "canary in the coal mine", for what to expect throughout their brief. Ranging from confidently citing and misstating inapplicable law in the oral argument section, to delegating all responsibility to mount any argument against the Appellants' opening brief by responding with only excerpts of the order or referencing disputed outside matters or pleadings.

By ignoring the arguments presented in the opening brief, FLOCK has forfeited any contrary position and effectively conceded the above issues. Simply reciting

6

the district court's order, without engaging the specific arguments raised in Appellant's opening brief, does not suffice. For example, page 19 of the Appellee brief uses district court's conclusions to blanket address multiple arguments.

 If such cursory responses were deemed sufficient, Appellee briefs would become little more than verbose reiterations of trial court rulings, devoid of any independent legal analysis or engagement.

FLOCK relies on avoidance than on actual involvement in the appellant's arguments. Appellee baselessly claims that the Appellant made "material misrepresentations about Appellee's product" or contained "allegations not raised in the operative complaint," but fails to go into detail what was wrong or new and expects the reader to do their own research—now forcing this Court or the Appellant to engage in an unsubstantiated goose chase. However, the Appellee did not dispute or explain the "material misrepresentations," thus abandoning and conceding the matter as quickly as it was raised.

To the extent necessary, all factual statements about Appellee's technology are from attached exhibits in the Complaint, ranging from public case studies, marketing materials, employee correspondence, or the February 25, 2023 record. Appellee's position is weak because the Appellee brief doesn't meaningfully address the Appellant's allegations.

7

Appellee's brief fails to address many of the factual allegations that form the core of Appellant's state-actor theory. For example, when liberally read, the Appellant demonstrated that the Appellee's ALPR business is deeply entwined with Ohio law enforcement through direct texting and email to police, software integration where it dispatches police , which resulted in the detainment of the Appellant.

Nowhere does Appellee challenge many of the specific allegations. Instead, Appellee offers only the blanket assertion that "furnishing government contracts" or "government licenses" is insufficient to create state action, ignoring Appellant's evidence of Appellee's actual influence.

By omitting any discussion of Appellee's role in shaping police practices, curating hotlists, or leveraging law enforcement for marketing purposes, as well as direct texting and emailing to police, Appellee has effectively conceded those arguments. Nor is citing case law such as Anderson v. County of Hamilton salvage the fact that this instant matter isn't about a private party contacting police, it's about a contracted company who has an entwined relationship with law enforcement and can directly text and email dozens of police officers to stick the police on a citizen, unlike "private" parties. Appellee has privileges that exceed those of a private citizen or bystander.

Appellant alleged that Appellee, treated as a state actor, deprived him of liberty and property without due process or a lawful basis. Appellee's brief does not analyze these constitutional claims on their merits; it simply asserts that Smith "failed to allege any plausible claim" under the Fourth, Fifth, or Fourteenth Amendment. Having admitted (by implication) all the operative facts, Appellee does not explain why texting police, alongside their close connection with JTPD, caused no deprivation; thus, it amounts to a concession of those points.

Now, Appellee merely insists that the Haddadin filings were properly judicially noticed. But the Appellee does not dispute Smith's argument that he received no notice or opportunity to respond to the extrinsic documents; it effectively treats the issue as irrelevant by omission. This means Appellant's complaint on this point stands unrebutted.

Appellant's state-law claims likewise include arguments not addressed in Appellee's brief. Appellee nowhere mentions Appellant's claims, which, when read liberally, evidence data commercialization. The Appellant demonstrated that the Appellee "sold access to [Smith's] data through its API for hundreds of thousands of dollars." However, the Appellee's brief does not address Appellee's API subscriptions or whether such conduct violated privacy statutes.

Its only response on this topic is to assert generally that license-plate images are publicly observed. Appellee also fails to address Appellant's argument, when read

9

liberally, that selling Smith's data was unlawful under the Driver's Privacy Protection Act (18 U.S.C. §2722). To the extent Appellant raised any other common-law claim (conversion of data, etc.), Appellee summarily labels his allegations "vague" and repeats the District Court's conclusion that "no information … in Appellee's system" was private, without meeting Appellant's specific allegations.

Notably, Appellee itself points out that Appellant's brief omitted specific tort claims (such as misappropriation and libel) and treats those as waived (they are not). However, except for those waived counts, Appellee's silence means it has failed to rebut the remaining tort arguments, effectively conceding them.

The appellant presented technical facts about the Appellee's API and camera network that the Appellee never disputes. For example, when read liberally, the appellant cited a Flock email confirming that its API "contains the same data that was present in the flag" – i.e., the license-plate information of Smith's vehicle – and that Flock charges fees for API access. Appellee's brief ignores these emails.

When read liberally, the Appellant highlighted how the Appellee's practices influence policing: there is evidence of "preemptive" stops before any crime is committed. It even bypasses normal dispatch by sending flaggings directly to officers. Appellant also documented that Appellee profiteers from selling drivers' information through its service. Appellee's brief never refutes these points. Apart

10

from the single sentence denying that a flagging is a "warrant." Appellee offers no response to Appellant's evidence that Appellee enlists police to promote its product or that Jackson Township's high-priority stops spiked after the deployment of FLOCK. By omitting any counterargument, the Appellee has effectively conceded these policy and data monetization claims as well.

### b.  It is unknown why the Appellee often punts to the District Court.

Appellee spared no expense in spending time framing its brief as an endorsement of the trial court's decision rather than writing any direct rebuttal to any of Smith's points.

By basing its arguments on the premise that the district court was correct, Appellee avoids engaging with why Smith contends the Court was wrong.

This pattern continues throughout Appellee's brief, which takes large swaths of the opening brief and defers to the district court's opinion in lieu of any substantive response.

Appellee's obstinate dependence on the disputed outside pleadings is further illustrated by its treatment of Smith's factual allegations. Rather than identifying specific flaws in Smith's pleadings, Appellee repeatedly cites to the disputed

11

outside pleadings to the lower Court and this Court as truth (Appellee's brief, pages 16, 25). Essentially, Jackson Township, through the Appellee's brief, is arguing on the Appellee's behalf.

Appellee offers no independent rebuttal to Smith's factual narrative (when Smith's brief read liberally); it merely labels Smith's allegations "illogical" because the district court supposedly found them so. But on appeal, the correctness of the district court's finding and the use of the disputed outside pleadings are precisely what is at issue. By insisting that Smith's claims lack merit "for the reasons" (Appellee Brief footnote on page 33) that the district court gave or what is contained within the disputed outside pleadings; the Appellee, in effect, asks this Court to *adopt the lower Court's conclusions and the disputed outside pleadings wholesale* rather than address Appellant's contentions anew.

The same flaw pervades Appellee's response on the legal issues. On Smith's §1983 claims, for instance, Appellee again foregoes a substantive refutation and instead recites the district court's holding or disputed outside pleadings. Appellee's brief emphasizes that *"*[t]he District Court properly rejected Smith's misrepresentations" (Appellee's Brief Page 20)

12

Rather than grapple with Smith's argument that Appellee's close collaboration with police rendered it a state actor, Appellee declares the district court was *"correct"* to conclude otherwise. But announcing that the Court below "correctly" decided the issue is no argument at all – it is the very question on appeal. Appellee offers no analysis of the state-actor tests or the alleged facts; it merely repackages the judgment in Appellee's favor.

Similarly, regarding Smith's other federal and state-law claims, Appellee's brief does little more than summarize the district court's reasoning throughout. However, this merely repeats what the lower Court held, rather than engaging with what Smith actually argued in his opening brief (for instance, when read liberally, why his allegations of a camera "malfunction" should have been taken as true at the pleading stage). By copying the district court's analysis point for point, Appellee has effectively sidestepped the actual debate that Smith's appeal invites – whether the district court's analysis was correct in the first place.

Appellee's refusal to directly confront most of Smith's arguments starkly undermines Appellee's position on appeal. Appellee's brief reads as if the district court's opinion is itself decisive authority, treating Smith's appeal as something to be disposed of by deference rather than by reasoned counterargument.

13

This "because the district court said so" approach abdicates Appellee's burden to justify the judgment. Courts have recognized that when an Appellee fails to respond to an appellant's arguments, it does so at its peril, as the silence may be treated as a concession of error. ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Elder, 90 F.3d 1110  (6th Cir. 1996) (citation and quotation marks omitted)

Appellee has not meaningfully answered, for example, how Smith's factual allegations (if taken as true) fail to state a claim, or why controlling precedent does not entitle Smith to relief.

By dodging these points, Appellee fails to carry its burden of persuasion on appeal. [1]

---

[1] The Appellee's invocation of the procedural history surrounding the Appellant's amended pleadings is immaterial. The Appellee would have been fully able to review the proposed amendments in advance of filing, however Appellee didn't bother. Because the Appellee raises this point only in passing and offers no substantive analysis, the contention is forfeited.

The Appellee instead engages in borderline frivolous arguments throughout their brief, cementing their misunderstanding, like stated earlier, of the law. These trivial points by the Appellee is apparent they can't see the forest for the trees.

Another misunderstanding of the law is seen in the *footnote* on Page 17 of their Appellee brief, where they state Ferguson doesn't support the Appellant's argument but instead indicates that it supports *their* position. So their argument to this Court is that outside pleadings written by a non-party now rises to the level of "undisputable," such as a felony information like in Ferguson. Outside pleadings/motions are not, at face value, "indisputable"; otherwise, it would be futile for a party to file any opposition.

This Court should not indulge Appellee's attempt to dispose of Smith's appeal by mere reference to the very order under review. Appellee's failure to substantively engage with Appellant's opening brief speaks volumes. The

 Because Appellee has offered little more than an ipse dixit in response to Smith's well-founded assignments of error, it has neither met nor attempted to fulfill its obligation to justify the dismissal under the applicable law.

The Appellee's brief is a "Al Capone vault". From glancing at the Appellee brief, one would think it's full of sound arguments. However, when one looks

15

inside the brief, there are no arguments of substance inside, other than recitations of the district court's order, which are haphazardly scattered throughout.

### c. Appellee doesn't detail what the Appellant raised for the "first time."

The Appellee never identifies—much less substantiates—any allegation or legal theory that purportedly surfaces for the first time on appeal but is absent from the Second Amended Complaint. Having raised the point only in passing and without specificity, the Appellee has forfeited it.

Every factual contention and legal theory advanced in the Appellant's 80-page Opening Brief finds its origin in the 100-page Second Amended Complaint and its exhibits. Contrary to the bald assertions in the Appellee brief in the footnotes of page 21. Although not reproduced verbatim (See SAC, R.E 21, PageID #: 651 ¶356), a liberal construction of the pro se pleading—makes plain that the Opening Brief merely elaborates on, rather than expands beyond, the allegations already pled. For instance, the Complaint alleges that Flock "dispatched" law-enforcement officers, thereby supplying the factual basis for the dispatcher-liability theory pressed on appeal and other more allegations.

Regardless, had the Appellee followed the motion to dismiss process correctly from the outset by not going against the grain underhandedly, it would have required *less* work and effort.

So now, Appellee in desperation to defend it's sunk cost fallacy to this Court, goes as far by refusing to mention "potentially dispositive authority" Mannheim Video, Inc. v. County of Cook, 884 F.2d 1043 (7th Cir. 1989), quoting Hill v. Norfolk & Western Ry., 814 F.2d 1192, 1198 (7th Cir. 1987) regarding disputed outside pleadings being considered without being converted to a summary judgement motion nor even attempt to argue against the idea that the District Court never notified the Appellant that it is using outside materials.

Instead of arguing in its brief, Appellee classifies the large swaths of arguments it refuses to address as either "Here, despite pages of rhetoric and hyperbole" (Appellee Brief at Page: 25)" Or where Appellee accuse the Appellant that "Throughout this case, Smith has devoted dozens of pages to repeating those demonstrably false claims" (Appellee Brief at Page: 28) but doesn't spend any time citing what or how those "false claims" are so. Appellee wants this Court to do that work for them as they instead immediately recite to the (Order, R. 38) to do the heavy lifting to argue on their behalf, thus those arguments in those "dozens" of pages are conceded.

17

The motion to dismiss or the appeal process is not a chameleon that the Appellee can change at will to protect their self-interests.

**d. In a heads-I-win-tails-you-lose Alice in Wonderland**

**argument, Appellee now seeks to limit the Appellant**

Appellee, who is now a stickler for the rules and process compared to down at the District Court, so instead of addressing most of the arguments in their brief, now seeks to limit the Appellant's arguments. In his opening brief even though he articulated these plausible allegations within the initial complaint (I.e FLOCK as dispatcher etc, see SAC.  R.E 21, PageID #: 627 ), the Complaint show that the factual underpinnings (Appellee's flagging effectively directing police) were undoubtedly raised in the complaint and at the lower Court below. The argument raised by the Appellee is now a distraction to the main issue, the disputed outside pleadings.

Indeed, none of the arguments or theories raised in the opening brief are raised for the "first time"; they are present, at some point, at the lower Court (Appellant Brief p. 34,39,42). This distraction by the Appellee is baseless.

### e. Appellee adds words or misquotes the Appellant.

The Appellee continues to assert that the Appellant accused the Appellee of "randomly" selecting the Appellant's license plate; however that word does not appear in the Complaint. Appellee only uses bits and pieces from the second amended complaint to misquote the Appellant (Appellee Brief page 18).

Appellee keeps stating that JTPD "entered" the information (Appellee Brief, page 25); however, disputed outside pleadings from outside parties are hearsay.

Stripped of the disputed extra-pleading materials, Appellee cannot articulate a cognizable defense. Nevertheless—buried on pages 26–27 of its brief—Appellee contends that Haddadin "didn't serve as the basis for dismissal." That assertion is the jurisprudential equivalent of claiming the iceberg did not sink the Titanic; only the water did.

Harmless-error doctrine is not a "break-glass-in-case-of-emergency" failsafe. It cannot sanitize an error when the very outside pleadings Appellee champions permeate nearly every page of it's Appellee brief, dominated its trial-court filings, and supplied the unverified "facts" adopted wholesale by the district court. Far from harmless, this reliance was manifestly *harmful* to Appellant.

The Appellee's brief itself demonstrates that the assertion is not true and that the dismissal of the claims was dependent on the disputed outside pleadings. The

19

Appellee invites this Court to engage in the same rank speculation as the District Court did in the disputed outside pleadings.

Alas, however, the documents cited by the Appellee will never be a proper vehicle for judicial notice, nor should they be considered by this Court, nor is Ahghazali v. Sec'y of HHS applicable to introduce disputed outside pleadings by a non-party to "acknowledge the truth."

The Appellee is muddying the waters by rehashing quotes from disputed outside pleadings to refute this case, to which they were not a party. To the extent necessary to address the issue, facts develop over time. Therefore, comparing what was pleaded or stated in the disputed outside pleadings from 2023 with the FLOCK Complaint pleaded in 2024 in another case is absurd.

Nor is it a "second bite at the apple," which is an awkward, offhand attempt to invoke collateral estoppel/ res judicata even though it was never raised at the lower Court in the motion to dismiss (See Motion to dismiss, R.E. 22, PageID #832).

Had the Appellee genuinely believed the Complaint was "wildly implausible," as it asserts (Appellee Brief 3, 20), it would have allowed the pleading to rise or fall on its own terms. Instead, it weaponizes a Rule 12(b)(6) motion as a stealth summary-judgment vehicle, smuggling in disputed extrinsic materials and urging the Court to treat them as gospel. What is truly implausible is not the Complaint,

20

but the Appellee's effort to convert disputed outside pleadings into facts at the motion-to-dismiss stage.

The disputed outside pleadings cannot prove the truth of a matter being asserted, as they are hearsay, which the Appellee does not dispute in their brief, as the word "hearsay" is not present in their brief.

When it comes to the arguments by the Appellee justifying using disputed outside pleadings in a motion to dismiss, there is "Clear circuit precedent that [renders the Appellee's] argument meritless. See *Waeschle v. Dragovic (11-1878)* (6th Cir. 2010)".

 Nor did Appellee raise any "good-faith argument for a change in the law." Id. Because Appellee can't, as not only is there case law that goes against Appellee's absurd position, but also the Federal Rules of Civil Procedure itself that stand in the way of Appellee's charade.

Appellee has failed to show that the documents even meet the Rule 12(d) exception, as they are neither referenced in the Complaint nor attached to it. ("[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to

21

[his] claim."[2]. Appellee does not mention 12(d) in their brief to the extent of adequately addressing the argument raised by the Appellant in the opening brief.

In conclusion, the number of times the Appellee references the disputed outside pleadings, even in their reply brief, shows that, indeed, it is critical to their defense.

### f.  Appellee ignores statistics and facts.

The statistics, which FLOCK conceded and does not address, presented in the Appellant's opening brief demonstrate a coordinated relationship between Jackson Township and the Appellee.

In the Appellant's case, the traffic stop occurred immediately after the Appellee sent texts and emails. The officer acted not on the basis of personal observation of the Appellant to establish reasonable suspicion, but instead relied on the Appellee's observations and the data sent to the officer's computer or phone by the Appellee. Individuals can be held just as liable (in other instances) for someone else's illegal actions if they tell that person to do "something" and that person goes along with it.

---

[2] Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir.1993)

### g. The Outside Pleadings are, yes, a reversal error itself

Even, for argument sake, if the disputed outside pleadings are "public records" according to Appellee to the extent it can be introduced to prove truth to a matter, it's immaterial in the end because at the motion to dismiss stage, the District Court must construe all facts in the light most favorable to the Plaintiff.

Indeed, the District Court improperly relied on the disputed outside pleadings to construe the facts *against* the Plaintiff, contrary to both the governing legal standard and procedural fairness. Appellee's arguments are blatantly incorrect in attempting to justify the District Court's use of disputed outside pleadings, which cannot be squared with the text, history, and purposes of Federal Rule of Evidence 201, 12(b)(6), and 12(d).

Examining the 1946 Advisory Committee notes on Rule 12 of the Civil Procedure, we observe that the committee discussed the use of outside matters in a Motion to dismiss, *stating that it shoul*d be converted to a Summary Judgment motion.

"If the Court does not exclude such material, the motion *shall* be treated as a motion for summary judgment and disposed of as provided in Rule 56.***.[3]" (emphasis added)

The intent behind Rule 12 is expressed through the rule itself and the historical notes, so there is no ambiguity that the motion *should* have been converted to a summary judgment.

## 1.  LIKE STATED IN THE OPENING BRIEF, THE REQUIREMENT THAT THE MOTION BE CONVERTED TO A SUMMARY JUDGMENT WHEN OUTSIDE MATTERS ARE CONSIDERED SHOULD BE STRICTLY ENFORCED.

**a.  Case law is readily available that refutes the Appellee's meritless position.**

There are decades of case law (Appellee ignores) that explicitly prohibit consideration of disputed outside pleadings in the context of a motion to dismiss

---

[3] Fed. R. Civil P. 12, advisory comm. n.

from this circuit—particularly when those documents are not incorporated by reference in the complaint (nor does FLOCK alleged its referenced); as what the Appellee did by backdooring outside material has denied the Appellant the procedural fairness to counter with actual, admissible documents.

Reversal would align with the intent behind Rule 12, The District Court repeatedly (throughout the order) "mak[es] a connection not established by the complaint alone" *Fonte,* 848 F.2d at 25, [4]

### b.  No investigation existed

Let's assume that the Appellees are dead wrong about the existence of an investigation into the Appellant, which in itself is an odious allegation that everyone refutes, but that won't stop the Appellees from taking the truth through the woodchipper.

Even though it pains the Appellee, Appellee's fanciful wishes must yield to reality; there was no investigation into the Appellant.  Nothing in the disputed outside pleadings passes any legal muster, so Appellee's long-winded exposition about the outside documents is hardly warranted, nor does it change reality.

---

[4] Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir 1988)

Arguments made outside of the Court by other parties will never be admissible as competent and credible evidence.

None of the disputed outside pleadings that the Appellee's petition to this Court were investigatory records or work product. It is irrelevant how many outside documents can be conjured by Appellee at a motion to dismiss stage because there are multiple reasons to impugn the truth of those disputed outside pleadings, as it is not an affidavit.

Indeed, the Appellant witnessed the situation, JTPD officers witnessed the stressful situation, Appellee, against its better judgement, initiated the situation via flagging through email and text which led to the erroneous detainment, so contrary to FLOCK assertions (while using disputed outside pleadings, again) that Smith would have "still been stopped" (Appellee Brief, Page 32.) But that's factually wrong, because if this Court takes FLOCK flagging out of the equation, Smith would never have been pulled over.

The Appellee's subjective opinions about a non-existent investigation are objectively poor.

Here is what the Appellee stated to Jackson Township at 4:33 am:

## OH - JVM1640

**Event Time: 4:33:15 02/25/2023**

**Source: CLEVELAND PD / FBI HUMAN TRAFFICKING MISSING JUVENILE VICTIM**

Case Number: CLEVELAND PD / FBI CASE

**Reason: CLEVELAND PD / FBI HUMAN TRAFFICKING VICTIM -** ███████████████
**/ SUSPECT: MICHAEL T. SMITH (DOB: 03/11/95) - IF SUBJECTS LOCATED CONTACT CLEVELAND
PD, FBI, AND STARK COUNTY CPS (HAVE CUSTODY OF MISSING JUVENILE)**

(See FLOCK flagging, RE 21-9, PageID #: 705)

Here is what the officers found *over* the 45 minutes later while they detained

the Appellant because of the Appellee:

| Call Type | Status | Priority | Dispatcher |
|---|---|---|---|
| Traffic Stop | In Progress | High | bbissler |

**Call Narrative**

**\*\*\* 2/25/2023 \*\*\***

| Time | Description | User |
|---|---|---|
| 5:18:04 AM | PER CLE PD -THEY ARE NOT SURE WHY THE MALE IS FLAGGED/ THEY HAVE NO 15'S AND DO NOT NEED HIM FOR ANY INVESTIGATION// CLE DISPATCH ALSO CHECKED WITH FBI AND THEY DO NOT NEED HIM FOR ANY INVESTIGATION | Bissler,Brittany |

(See Police Report, RE 21-11, PageID #: 709)

**4  THE APPELLEE INVITED THE DISTRICT COURT TO MAKE A PREJUDICIAL ERROR WHEN IT DISMISSED THE COMPLAINT USING OUTSIDE PLEADINGS, APPELLEE CAN'T BENEFIT FROM IT.**

### a.  Standard of review

The District Court dismissed Michael Smith's Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. On appeal, this court reviews de novo a dismissal pursuant to Rule 12(b)(6).[5]

### b.  The Appellee's first argument is incorrect regarding the pleadings being able to be introduced through judicial notice.

The Appellee's reliance on Fed R. Evid 201(b) is misplaced. Fed R. Evid. 201(b) states that the District Court may take judicial notice of any matter "not

---

[5] Courie v. Alcoa Wheel & Forged Products, 577 F.3d 625, 629 (6th Cir.2009) (citing Marks v. Newcourt Credit Grp., Inc., 342 F.3d 444, 451–52 (6th Cir.. 2003)

28

subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(b). However, A high degree of indisputability is the essential prerequisite before a Court can take judicial notice. [6]

A pleading written by the opposing party (not FLOCK) (in the Smith vs Haddadin case) does *not* meet this high standard of "indisputability". The outside pleading is reasonably disputable on its face and *was* disputed at the trial court level when it was filed.

The Plaintiff (Appellant) opposed the Haddadin pleadings when the documents were filed. Now, out of the woodworks, the Appellee, who never participated in that case, can now use them as truth in this instant case because it fit's their narrative.  The District Court erred when it took judicial notice of documents that cannot meet the burden of a "a high degree of indisputability[1]."

The Appellee wants this Court to conclude that filing a pleading with a court essentially means its contents now meet the "high degree of indisputability" and can be judicially noticed as truth forthwith, even if they did not write the pleadings.

This Court has stated in Moyer v. GEICO, No. 23-4015 (6th Cir. 2024)

_____

[6] Fed. R. Evid. 201, advisory comm. n.

29

"A district court should not rely on documents at the motion-to-dismiss stage if their authenticity is disputed."[7]

Nothing that the Appellee uses from the outside pleading is "adjudicative facts," subject to the Federal Rules of Evidence 201.

As the Advisory Committee Notes (1972) to Federal Rule of Evidence 201(a) explain

> "****adjudicative facts are those that concern the immediate parties to a lawsuit and address who did
>
> what, where, when, and how. See, e.g., Alaska Airlines Inc. v. CAB, 545 F.2d 194, 200 n.11 (D.C. Cir. 1976).****"

Nothing that the Appellee attempts to introduce ever went in front of a jury, comply with the rules of evidence or ever was part of a finding of fact  *Drummond v. Prestman,* 25 U.S. (12 Wheat.) 515, 519, 6 L.Ed. 712 (1827) (holding that the record of a prior judgment in an action by Plaintiff against defendant's son "was certainly competent to prove a fact [that] every judgment is competent to prove between any parties, to wit, that such a judgment was obtained between certain parties, on a certain cause of action").

---

[7] DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010); see Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); Tierney v. Vahle, 304 F.3d 734, 739 (7th Cir. 2002).

However, Appellee has discovered a simple workaround to frustrate the intent of Rule 12: by framing disputed outside materials as credible and judicially noticed, a party can effectively smuggle *any* materials into a motion to dismiss, resulting in an erroneous dismissal, as seen here. Appellee's brazen tactic of introducing disputed outside pleadings in this manner is a direct affront to the well-established boundaries and integrity of the motion to dismiss process.

What's puzzling about the Appellee's doubling down on its flawed position is the bias of the source that the Appellee uses. Arguably, there is an underlying bias stemming from disputed pleadings in another case, where that party was being *sued*, so the information used by the Appellee is not a neutral source.

The trial court should have treated the disputed outside pleading like a swollen appendix—the non-integrated attachment should have been severed.

### c. The District Court deprived the Appellant of procedural fairness

The Appellee invited the trial court to consider documents it couldn't under the rules, for a motion to dismiss. The Appellee cannot benefit from their invited error. Corbin v. Baltimore & Ohio Railroad Co., 234 F.2d 78, 81 (6th Cir . 1956) ("[A] party cannot be permitted to take advantage of errors which he has, even in

good faith, invited or induced the district court to make."). The Appellee does not refute the invited error argument.

### 5. THE APPELLEE IS WRONG, THE COMPLAINT DOES STATE PLAUSIBLE CLAIMS UNDER 1983 AND STATE LAW.

#### a. Introduction

While Appellee raises several absurd arguments that all rest on illogical readings of the Complaint, none are availing. When read liberally, the complaint states plausible claims under 1983 and State law.

It's transparent that the Appellee, being held as a State actor, is a tender subject for them.

Appellee however, repeatably, ignores the import of the argument that the Appellee flagging, itself was the cause of the erroneous traffic stop and that was able to dictate the police actions with it's internal influence over police operations, which the Appellee does not address but rather sidesteps and punts to the District

Court to argue on their behalf (See Appellee Brief Page 25), so for all intents and purposes is conceded by the Appellee.[8]

Appellee does not dispute in its reply brief that the entwinement of Appellee with the police agency goes beyond a typical arms-length contract. There is no dispute in their brief that the Appellee had "leveraged its police contracts… to get unauthorized privileges and access that no other private company enjoys" (See Appellant Brief, Page 50), even using government facilities and staff for marketing purposes. This level of integration also supports a *"close nexus"* or entwinement theory: the state "insinuated itself into a position of interdependence" with Appellee such that Appellee's actions may be fairly attributed to the state.

Thus, Appellee's actions were taken "under the authority of state law". Appellee should be held liable for providing the false basis for the Appellant's seizure to the State. Entwinement of this nature turns a company such as Appellee into a state actor.

---

[8] Appellee are still missing the forest for the tress, by still attempting in their last sentences to limit the Appellant's claims with the idea that Fraudulent concealment is not recognized in Ohio, however, Courts in Ohio do recognize it as a viable claim "In order to substantiate a fraudulent concealment claim, a plaintiff must establish the following:***" see Montgomery v. Vargo, 2016-Ohio-809, ¶ 8, 60 N.E.3d 709, 712"

## 6.  AN EVOLVED TEST IS NEEDED TO ADDRESS
## THESE UNIQUE RELATIONSHIPS.

Appellee doesn't address this in its brief; thus, it is conceded. However, it is warranted to have a hybrid test, as the Appellee is involved in police workflows (hardware, software, communications), where its actions are functionally indistinguishable from those of an official dispatcher.

### CONCLUSION

In conclusion, Appellee's nihilistic legal maneuvering of using outside matters at the trial court without filing a summary judgment motion or backdooring outside materials in a motion to dismiss, but without the District Court informing the Appellant that the motion is a summary judgment, shouldn't be blessed. The outside pleadings are nothing more than the Appellee flailing their arms yelling "Look over here!!" to distract from the Complaint.

The Appellant challenged the Haddadin "pleadings" back at the trial court, back when it was filed, and the Appellee still amuses this Court by saying it was "Undisputed" (Appellant brief page 26). They do not address this in their brief; thus, it is conceded.

Instead of acknowledging that the District Court's use of outside materials was improper, the Appellee instead demonstrates its misunderstanding of the law

34

and facts. First-hand knowledge is the gold standard in litigation; yet, the Appellee prefers sensationalism over admissible evidence. The Appellee's irresponsible hyperbole lacks substance.

Indeed, "competing inferences could be drawn requiring factual development though discovery" (see Fabian, 628 F.3d at 281), so this Court should reverse the District Court's dismissal and reinstate his claims, remand this case for further proceedings consistent with this Court's opinion.

Dated: July 7, 2025

Respectfully submitted,

s/

MICHAEL SMITH

1225 SKYLINE DR APT 105

ORRVILLE OH 44667

*PRO SE APPELLANT*

35

# TYPE-VOLUME CERTIFICATION

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), Michael Smith hereby certifies that this brief complies with the type-volume limitation in Rule 32(a)(7)(B) because, as counted by the Microsoft Word 2024 word count tool, this brief contains 6,497 words (including all image text) and excluding the parts exempted by Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirements in Rule 32(a)(5)(A) and the type-style requirements in Rule 32(a)(6) because this brief has been prepared in proportionally spaced 14-point Times New Roman font.

Dated: July 7, 2025

s/

_____

MICHAEL SMITH

IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH
CIRCUIT

MICHAEL SMITH,

                              Appellant,

          v.

FLOCK GROUP INC,                Case No.
                                25-3287

                              Appellee,

 

          MICHAEL SMITH hereby certifies the following under the penalty of
perjury:

          On July 7, 2025, I filed the foregoing document electronically, and it
It is available for viewing and downloading from the ECF system. Service was
accomplished by means of Notice of Electronic Filing and email upon:

                    Michael Pest

          Dated at Cleveland, Ohio, this   7 day of July 2025

                                   s/ MICHAEL SMITH
                                   _____
                                   MICHAEL SMITH